Argued and submitted March 27, 2013, conviction on Count 3 reversed and remanded; remanded for resentencing; otherwise affirmed March 19, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WENDELL B. BARNES,
aka Wendell Burton Barnes,
*Defendant-Appellant.*

Multnomah County Circuit Court
110646752; A149393

323 P3d 545

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jake J. Hogue, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

### ORTEGA, P. J.

Defendant appeals a judgment imposing sanctions for two counts of contempt (Counts 1 and 3) for violating a restraining order, challenging the trial court's admission of evidence over his hearsay objection. The restraining order at issue prohibited defendant from, among other things, contacting his wife (the victim) by telephone, or entering or attempting to enter the area within 150 feet of the couple's residence. At trial, two police officers testified about their interactions with the victim and defendant. The trial court initially sustained defendant's hearsay objections to portions of the officers' testimony that touched on what the victim had told them. However, after defendant testified in his defense, the court allowed one of the officers to recount the victim's statements to the officer, concluding that the testimony was admissible to impeach defendant's testimony. On appeal, defendant contends that the court erred by allowing the officer's testimony over his hearsay objection. The state counters that defendant failed to preserve the argument that he now makes on appeal and that, even if that argument were preserved, any error was harmless. We conclude that defendant preserved his argument and that the court erred in allowing the disputed testimony. We further conclude that the error was harmless as to Count 1, but was not harmless as to Count 3. Accordingly, we reverse and remand defendant's conviction on Count 3, remand for resentencing, and otherwise affirm.

On appeal of a judgment of conviction, we view the evidence in the light most favorable to the state. *State v. Maiden*, 222 Or App 9, 11, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009). However, when assessing whether the erroneous admission of disputed evidence was harmless, "we describe and review all pertinent portions of the record, not just those portions most favorable to the state." *Id.*

The following facts are undisputed unless otherwise indicated. The victim obtained a Family Abuse Prevention Act restraining order, ORS 107.718, prohibiting defendant from, among other things, contacting or attempting to contact her by telephone "directly or through third parties" or "entering or attempting to enter, or remaining in, the

area within 150 feet" of the victim's residence or workplace. Defendant was served with the restraining order the same day.

Three days later, the victim was living in the couple's residence with their 13-year-old son, and defendant had just been released from the hospital. Late that day, Officer Hollenbeck responded to a report from the couple's residence that a restraining order had been violated. After speaking with the victim at the residence, Hollenbeck proceeded to search for defendant in the surrounding area in his patrol car, and observed him drive within one block, or about 300 feet, of the residence. Hollenbeck never observed defendant make the northbound turn that would have taken him directly to the residence. Hollenbeck followed defendant, eventually stopping him approximately 500 to 600 feet from the residence.

Officer Paddock had arrived at the residence separately in response to the victim's report. After talking briefly with the victim, he left to search the area, but quickly returned when he noticed the victim flagging him down. Paddock and the victim had a second conversation, the contents of which are central to defendant's assignment of error on appeal. Paddock proceeded to the location where Hollenbeck had stopped defendant. After speaking with defendant during the stop, Paddock placed him in custody for violating the restraining order.

The state charged defendant with three counts of violating a restraining order. Counts 1 and 2 related to allegations that the defendant contacted the victim by telephone, and Count 3 related to defendant's alleged attempt to enter within 150 feet of the couple's residence.

At trial, the state presented its case through the testimony of Hollenbeck and Paddock. At one point, Paddock testified that defendant "told me he was going to the residence to pick up some syringes, that he'd called [the victim]." On several occasions, the prosecutor tried to elicit testimony from the officers about the victim's statements to them at the residence. The trial court initially sustained defendant's hearsay objections to that testimony. At the close of the

state's case, defendant moved for a judgment of acquittal on all counts. The trial court granted his motion as to Count 2, but denied it as to the other counts.

Defendant then testified in his own defense. He generally explained that he was diabetic and that the circumstances that led to his arrest all related to his need for insulin that was at the couple's residence. Defendant testified that, after he was released from the hospital, he ate at a McDonald's restaurant near the residence and feared that his blood sugar levels would rise dramatically if he did not take insulin. He asserted that he spotted one of his son's classmates at the restaurant and learned that the classmate was about to call his son at the couple's residence. Defendant claimed that, when the classmate made the phone call, defendant stood four or five feet from the phone and yelled a message "at the top of [his] voice" towards the receiver to leave his insulin on the curb beside his pastor's house, which was down the block and about 450 feet away from the couple's residence. Defendant testified that he then drove toward his pastor's house to retrieve the insulin and was stopped by the police. He maintained that he did not intend to speak with the victim, but only attempted to relay a message to his son, and he also claimed that he wanted his insulin placed outside his pastor's house because he did not want to violate the restraining order.

Defendant, through his testimony, also attempted to establish a "choice of evils" defense to Count 1, contending that his medical needs placed him in an emergency situation and that he did "the best he [could] to try to abide by" the restraining order by yelling instructions into the receiver after a third party had placed a call to the couple's residence.

After defendant testified, the state recalled Paddock as a witness. The state asked Paddock to recount what the victim had told him when she flagged him down and spoke to him a second time. Defendant objected on hearsay grounds, and the state responded that the testimony was for impeachment purposes. Defendant further objected, contending that "you can't impeach with someone else's statement. You can only impeach with—with someone's—with your own

statement." The court overruled his objection, stating that "[i]t won't be for substantive evidence, but just for impeachment purposes. Inconsistent statement. You may inquire." Paddock testified that the victim told him that defendant had called her and "he wanted some items from the house," and that "she was to put them by the bush and he was going to drive by and get them." She told Paddock that defendant meant a bush by their driveway.

At the close of evidence, the court indicated that it had "weighed the credibility and demeanor of the witnesses" and found that defendant had violated the restraining order "both by making the phone call through a third party and by going to the residence."[1]

As noted, defendant assigns error to the trial court's admission of Paddock's rebuttal testimony that the victim told him that defendant had called her and asked her to place the insulin by a bush next to their driveway. Defendant argues that that testimony contained inadmissible hearsay that could not be admitted for impeachment purposes because the impeachment value of the statements depended on the truth of the statements. In particular, defendant relies on *State v. Reid*, 107 Or App 352, 356, 811 P2d 1380 (1991), in which the court concluded that an out-of-court statement of a party other than a witness is hearsay if the impeachment value of the testimony depends on the truth of those statements and, thus, the credibility of the declarant.

In response, the state asserts that defendant failed to preserve that argument. According to the state, defendant's argument on appeal—that testimony regarding out-of-court statements by a nonparty declarant cannot be offered to impeach the testimony of a witness if the impeachment value of the testimony depends on the truth of the matter asserted—is materially different than the theory that defendant advanced at trial: that "you can't impeach with someone else's statement. You can only impeach * * * with your own statement."

---

[1] During the sentencing portion of the hearing, the court told defendant, "You had very contradictory and inconsistent testimony, and you knew about the restraining order but you didn't care about it."

We conclude that defendant adequately preserved his argument. To preserve an argument, the party must provide the trial court with an explanation of his or her objection that is specific enough to afford the court the opportunity to analyze any alleged error. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Preservation policies are prudential and pragmatic in nature. *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008). "Whether a party adequately presented a contention to the trial court varies depending on the nature of the claim or argument." *State v. Wirfs*, 250 Or App 269, 273, 281 P3d 616, *rev den*, 352 Or 378 (2012).

In this case, the state does not fairly characterize the entirety of defendant's objections. When the state offered Paddock's testimony on rebuttal, defendant renewed his objection on hearsay grounds. That is, he argued that the out-of-court statement that the state was attempting to introduce was offered to prove the truth of the matter asserted, OEC 801(3)—that defendant had called the victim and asked her to place the insulin outside the residence. When the state countered defendant's objection with the assertion that the testimony was for impeachment purposes (*i.e.*, offered for purposes other than the truth of the matter asserted), defendant explained that "you can't impeach with someone else's statement. You can only impeach * * * with your own statement." Therefore, defendant's objection was two-fold: first, that the statement was hearsay because it was being offered for the truth of the matter asserted and, second, that the statement did not qualify as a prior inconsistent statement because the "inconsistent statement" must generally have been made by the same witness. *See* Laird C. Kirkpatrick, *Oregon Evidence* § 801.01[3][d][iii][1] (6th ed 2013) ("Prior inconsistent statements of a witness are admissible for the purpose of impeachment, even when not admissible as substantive evidence. They are not hearsay because the jury is not being asked to believe the truth of the earlier out-of-court statements, but rather to disbelieve the witness's in-court testimony because the witness has not been able to tell a consistent story."). Accordingly, defendant's hearsay objection was sufficient to preserve the contention that he now makes on appeal—that the officer's rebuttal testimony about what the victim told him contained

hearsay because the victim's statements were being offered for the truth of the matter asserted, and the only impeachment value that they had depended on the truth of the victim's statements.

On the merits, we conclude that the trial court erred by admitting Paddock's rebuttal testimony that the victim told him that defendant had called and instructed her to put the items he wanted "by the bush and he was going to drive by and get them." Those statements were hearsay for the reason that we elucidated in *Reid*. There, the defendant was charged with delivery of a controlled substance and conspiracy to deliver a controlled substance. 107 Or App at 354. At the trial, the defendant testified that he was not dealing drugs that day "or any other given day." *Id.* at 355. The trial court then allowed the state to present the testimony of a police officer, over the defendant's hearsay objection, that, when the defendant was taken into custody at a local park, a person driving a pickup truck had approached the defendant and asked to buy marijuana, and when the defendant refused, the person had said, "You know me; I have done business with you before." *Id.* at 356. We reversed the defendant's conviction and remanded for a new trial, concluding that

> "[t]he officer's testimony impeached defendant only because the pickup driver's statements, if true, contradicted defendant's testimony that he had never sold drugs. The impeachment value of that testimony depended on the truth of the out-of-court declarant's statements and, thus, on the credibility of the declarant. The pickup driver's statements were hearsay and were not admissible."

*Id.*

Similarly here, the state offered Paddock's rebuttal testimony about the victim's statements for the truth of those statements. That is, they were offered to contradict defendant's earlier testimony that he wanted the insulin left outside his pastor's house. Because the impeachment value of that testimony depended on the truth of the victim's statements, the testimony contained inadmissible hearsay. *Id.*

The state, for its part, does not contend otherwise. Instead, the state asserts that any error was harmless. We

will affirm a judgment in spite of the erroneous admission of evidence if there is little likelihood that the admission of the evidence affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003); Or Const, Art VII (Amended), § 3.

The focus of our inquiry "is on the possible influence of the error on the verdict rendered, not whether this court, sitting as factfinder, would regard the evidence of guilt as substantial and compelling." *Davis*, 336 Or at 32. We first determine the particular issue to which our harmless error analysis applies. *State v. Whitmore*, 257 Or App 664, 672, 307 P3d 552 (2013). If the erroneously admitted evidence is related to a central factual issue, it is more likely to have affected the factfinder's determination. *Id.* "We then assess the erroneously admitted evidence in the context of other evidence pertaining to the same issue." *Id.* In doing so, we consider any differences between the quality of the erroneously admitted evidence and other evidence on the same issue. *Id.* We also consider the importance of the erroneously admitted evidence to the party's theory of the case. *Id.* at 673.

As to Count 1 (related to defendant contacting the victim by telephone), defendant argues that Paddock's rebuttal testimony directly undermined defendant's general credibility and thereby undermined his defense. As to Count 3 (related to his alleged attempt to enter within 150 feet of the couple's residence), defendant contends that the error requires reversal because the erroneously admitted evidence directly contradicted his defense that he was traveling to his pastor's house to retrieve his insulin and did not intend to enter within 150 feet of the residence. The state counters generally that defendant's credibility was undermined because *his own* testimony was internally contradictory and inconsistent. Moreover, the state contends that properly admitted evidence, including defendant's own testimony, established that defendant willfully violated the restraining order by contacting the victim by telephone. Similarly, as to Count 3, the state maintains that evidence other than Paddock's rebuttal testimony established that defendant attempted to go within 150 feet of the residence.

We begin with Count 1. We conclude that, given the quantity and quality of properly admitted evidence, including

defendant's own testimony, there is little likelihood that the error affected the verdict. Notably, the restraining order prohibited contacting the victim "directly or through third parties." We have already recounted defendant's testimony about his interaction with his son's classmate at McDonald's, in which defendant explained that, when the classmate called the victim's home phone, defendant "yelled at the top of [his] voice" without attempting to discern who had answered the phone. In addition, defendant testified inconsistently as to whether he had or had not heard the victim's voice on the phone during the interaction. Paddock also testified on direct examination that defendant admitted knowledge of the restraining order's prohibitions and told Paddock "that he'd called [the victim]." The content of Paddock's rebuttal testimony—that the victim told him that defendant had called her—was cumulative of the evidence that defendant had contacted the victim by telephone "directly or through third parties." Moreover, Paddock's rebuttal testimony did not relate to defendant's main defense theory on Count 1 (i.e., the "choice of evils" defense). Accordingly, as to Count 1, we conclude that there is little likelihood that the court's erroneous admission of Paddock's rebuttal testimony affected the court's verdict.

Whether the error was harmless as to Count 3 is a closer question. The erroneously admitted evidence was directly related to the central factual issue surrounding Count 3: whether defendant intended to "enter or attempt[] to enter, or remain[] in, the area within 150 feet of [the victim's residence]." Further, the evidence directly undermined defendant's theory of the case—that he wanted the insulin left at his pastor's house because he did not want to violate the restraining order. Also, when Paddock's rebuttal testimony is assessed in the context of other evidence pertaining to the same issue, it is apparent that the victim's statements were more detailed and more damaging to the defense than the other evidence on the issue. That is so because, outside of the content of Paddock's rebuttal testimony, there was limited evidence that defendant intended to enter within 150 feet of the residence, and no direct evidence that he actually did so. Hollenbeck testified that he had observed defendant drive within approximately 300 feet of the residence

but that defendant had never made the northbound turn that would have put him on a direct approach to the residence. Accordingly, Hollenbeck's observations of defendant's movements were consistent with defendant's explanation that he had only intended to drive to his pastor's house. And ultimately, the only evidence in the record that related directly to Count 3, other than the improperly admitted evidence, was Paddock's somewhat vague testimony on direct examination that defendant "told me he was going to the residence to pick up some syringes[.]"

Accordingly, the victim's statements to Paddock that defendant had called her and told her that "he wanted some items from the house" and his instruction "to put them by the bush and he was going to drive by and get them" damaged the defense in two significant ways. First, those statements provided more detail than did Paddock's direct testimony that defendant had admitted that he was going by the house to pick up some syringes; thus, the evidence bolstered the state's case on that issue. Second, the erroneously admitted evidence severely discredited defendant's account of what had happened. That is of particular importance because, although defendant's testimony in defense of Count 1 was internally inconsistent and contradictory, it was not so in defense of Count 3. He advanced a cogent defense theory, and his testimony was consistent with that theory.

In short, the record contains evidence of a somewhat vague admission by defendant to Paddock that he was "going to the residence" that was bolstered by the more definitive statement reportedly made by the victim that defendant had called her and directed her to place his insulin by the couple's driveway. That evidence had the further effect of directly contradicting defendant's testimony that he had asked for the insulin to be placed outside of his pastor's home. Given the scarcity of evidence that defendant had intended to enter within 150 feet of the couple's residence, and because the erroneously admitted evidence related to a central factual issue and directly undermined the defense theory, we cannot conclude that there is "little likelihood" that the erroneous admission of Paddock's rebuttal testimony affected the verdict.

Conviction on Count 3 reversed and remanded; remanded for resentencing; otherwise affirmed.