Argued and submitted March 11, decision of Court of Appeals and judgment of
circuit court reversed; case remanded to circuit court for further proceedings
October 2, reconsideration denied December 16, 2003

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## CORNELIUS KEY DAVIS,
*Petitioner on Review.*

(CC 96051015; CA A106019; SC S49523)

77 P3d 1111

Andy Simrin, Salem, argued the cause and filed the brief for petitioner on review. On the petition for review were Ingrid A. MacFarlane, Deputy Public Defender, and David E. Groom, Acting Executive Director.

Kaye E. McDonald, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

DURHAM, J.

** Kistler, J., did not participate in the consideration or decision of this case.

## DURHAM, J.

In this criminal case, defendant challenges his conviction for murder, ORS 163.115. He contends that the trial court erred in excluding certain statements that the victim made more than two months before her death. According to defendant, the statements supported his factual theory that the victim had committed suicide.[1] The trial court determined that the statements were not relevant to the victim's state of mind at the time of the shooting and, therefore, were not admissible. The Court of Appeals affirmed that decision without an opinion. *State v. Davis*, 181 Or App 467, 46 P3d 229 (2002). On review, we conclude that the trial court erred in excluding the statements and that that error was not harmless. Accordingly, we reverse the decision of the Court of Appeals and the judgment of the trial court, and remand the case to the trial court for further proceedings.

The record discloses the following facts. On January 14, 1999, a jury convicted defendant of the murder of the victim. The victim died on May 7, 1996, from a single gunshot wound to the center of her forehead. Defendant and the victim had had an "on again, off again" relationship from 1992 until the victim's death. During his relationship with the victim, defendant was married to Davis, with whom he also had had an "on again, off again" relationship. Defendant also had intimate relationships with other women during that time.

Defendant and the victim had three children together, including a son who died in April 1996 from sudden infant death syndrome. Shortly after the death of their son, defendant moved out of the apartment that he had shared with the victim and moved in with his friend Ward. At about the same time, defendant began an intimate relationship with Hoffman, who lived with him sporadically at Ward's townhouse.

On May 7, 1996, defendant and Ward invited several people to a party at Ward's townhouse. During the evening,

---

[1] Defendant also argues that his sentence under Ballot Measure 11 (1994) is unconstitutional. Because we reverse the judgment of the circuit court that imposed the sentence, we do not address defendant's argument regarding that sentence.

the victim arrived and confronted defendant about their relationship. Defendant went upstairs. After retrieving a gun that defendant intended to trade for drugs that night, defendant entered an upstairs bathroom. The victim followed him. A short while later, witnesses in the house heard what sounded like a door slamming. The victim suffered the fatal gunshot wound to the forehead while in the bathroom. Defendant then proceeded downstairs and asked everyone to leave. The only witnesses to the shooting were defendant and the victim.

Defendant and his brother disposed of the victim's body in a remote location. Aided by Ward, they also cleaned Ward's townhouse in an attempt to cover up the victim's death. After the discovery of the victim's body, and an investigation, the state charged defendant with murder, ORS 163.115, and felon in possession of a firearm, ORS 166.270.

The disputed factual issue at defendant's trial was whether defendant shot the victim or whether the victim shot herself. Defendant testified that, while in the bathroom, he had told the victim that their relationship was over and that he had "replaced" her. He further testified that the victim then grabbed the gun, which was lying near the sink, and, after pointing it at him, turned the gun on herself and fired. The state presented evidence supporting its theory that defendant shot the victim.

Before the trial, the state had appealed an order of the trial court excluding evidence of defendant's prior acts of violence towards the victim and statements that defendant and the victim made during and regarding those incidents. The trial court had excluded the evidence under OEC 404(3)[2] and OEC 802.[3] The Court of Appeals affirmed in part and reversed in part. *State v. Davis*, 156 Or App 117, 967 P2d 485

---

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[3] OEC 802 provides that "[h]earsay is not admissible" except as otherwise provided.

(1998) (*Davis I*). The court held that evidence of defendant's prior abuse of the victim was not relevant to whether he had shot her with a gun on May 7, 1996. *Id.* at 125. However, the court concluded that certain evidence concerning events in March 1996 and thereafter was admissible because it "could be relevant to prove that defendant had a motive to kill [the victim] in May 1996." *Id.* at 126. Neither party sought review of that decision of the Court of Appeals in this court.

On remand, the trial court admitted the evidence that the Court of Appeals had determined was relevant to show defendant's motive. The state then sought to exclude evidence that defendant claimed would support his factual theory that the victim had committed suicide. That evidence consisted of statements that the victim had made more than a month before her death. The state argued that the court should exclude those statements because they were "too remote to be relevant and would unduly prejudice a jury." Relying on the opinion of the Court of Appeals, the trial court granted the state's motion in part and excluded evidence of statements that the victim had made before March 1996. The trial court ruled:

> "The court allows part 2 of the State's Motion to Exclude Evidence (Evidence of victim's state of mind) to the extent such evidence consists of events occurring prior to March 1996. * * * Evidence prior to March 1996 of the conduct of a witness to prove intent, plan or otherwise under OEC 404 is too remote in time for its probative value, if any, to out-weigh its prejudicial effect."

During trial, defendant submitted ten separate offers of proof regarding evidence of statements that the victim had made before March 1996 to one or another of four witnesses. We summarize below the contested evidence that defendant offered according to the offer of proof number assigned at trial.[4]

*Offer of Proof #1*: Heidt, a friend of defendant, would have testified that, in December 1992, following a miscarriage, the victim stated that "she didn't know if she could

---

[4] On review, defendant does not assign as error the exclusion of the evidence described in his second offer of proof. To avoid confusion, we have retained the numbering of the offers of proof that the court assigned at trial.

continue going without [defendant]" and that "she didn't know if she could go on."

*Offer of Proof #3*: VanDehey, a woman with whom defendant had cohabited between the summer of 1992 and December 1993, would have testified that, during the time of her cohabitation with defendant, the victim had stated that she would kill herself because of defendant's other relationships and that, if she could not be with defendant, then she would kill herself and defendant "would be sorry for it."

*Offer of Proof #4*: VanDehey would have testified that, between 1992 and 1993, the victim would claim every month that she was pregnant and had had a miscarriage, and that the victim had stated that she was taking medication for depression.

*Offer of Proof #5*: VanDehey would have testified that the victim "was always threatening to kill herself if she couldn't have [defendant]."

*Offer of Proof #6*: VanDehey would have testified as to the contents of a letter that she claimed that the victim wrote in November 1993. In the letter, the victim made several statements about not wanting to lose defendant and that she thought that she should just disappear.

*Offer of Proof #7*: Cariati, a former girlfriend of defendant, would have testified that, between December 1992 and May 1993, the victim had stated that defendant was hers and Cariati could not have him, and that the victim threatened to kill herself.

*Offer of Proof #8*: Davis, defendant's wife, would have testified that, between late 1993 and early 1994, she and the victim would get into physical altercations, during which the victim would state that defendant was hers and that it was "time to settle this."

*Offer of Proof #9*: Davis would have testified that, in 1994, the victim left a note for defendant that stated that their son was in the hospital dying and that defendant should go to the hospital before the son died.

*Offer of Proof #10*: Davis would have testified (1) that, in April 1995, the victim stated that defendant was

hers and, although it was not true, that the victim and defendant were engaged and that she had asked her mother for money so that defendant could divorce Davis; (2) that, in 1995, the victim stated that if she could not have defendant, no one could; and (3) that the victim had stated that defendant could not take her son with Davis and that she would "kill him first."

The trial court excluded all the proffered evidence, ruling that

"* * * I think it is pretty clear that both—that based on the Court of Appeals' decision in State v. Davis, that none of this evidence would be admissible because of its age. It's all too old. It all occurred before March 1996. At least that ruling would be consistent with what the Court of Appeals ruled, even though the Court of Appeals didn't address all these statements, and so absent anything new or additional, that's the ruling of the Court."

As noted, the jury convicted defendant of murder and felon in possession of a firearm. Defendant appealed his murder conviction, arguing that the trial court erred in excluding the proffered evidence of the victim's statements. The Court of Appeals affirmed, and this court allowed defendant's petition for review.

On review, we first address whether the evidence that defendant sought to introduce was relevant under OEC 401. That rule provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

OEC 401 provides a "very low threshold" for the admission of evidence, that is, "evidence is relevant so long as it increases or decreases, even slightly, the probability of the existence of a fact that is of consequence to the determination of the action." *State v. Barone*, 329 Or 210, 238, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000). We review a trial court's determination of relevance under OEC 401 for error of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

Defendant argues that the evidence showing that the victim, for years before her death, was obsessed with defendant and threatened to kill herself because of their relationship was related to the victim's state of mind and relevant to prove defendant's factual claim that she committed suicide in May 1996. The state now concedes that the evidence in defendant's nine offers of proof, described above, was relevant to the question whether the victim committed suicide and that evidence of the victim's statements fell within the "state of mind" exception to the hearsay rule, OEC 803(3).[5] The state's concession, which we accept, obviates the need for this court to decide whether all the evidence in defendant's nine offers of proof was relevant and satisfied the "state of mind" exception to the hearsay rule, or whether any of the proffered evidence was vulnerable to any other evidentiary objection. On the basis of the state's concession, we assume that the evidence offered in defendant's nine offers of proof was admissible and that the trial court committed legal error in concluding otherwise.

■     Nevertheless, the state asserts that the trial court ultimately did not err, because the court properly excluded the victim's statements based on considerations listed in OEC 403. That rule provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

The state argues that the trial court determined that the evidence was unfairly prejudicial and needlessly cumulative, and that this court cannot reverse that ruling unless it amounts to an abuse of discretion.

---

[5] OEC 803(3) provides:

"The following are not excluded by [OEC 802, the rule prohibiting the admission of hearsay evidence], even though the declarant is available as a witness:

"* * * * *

"(3) A statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain or bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will."

■ After reviewing the record, we do not agree with the state's characterization of the trial court's rulings. The court stated in its letter opinion that the evidence "is too remote in time for its probative value, if any, to outweigh its prejudicial effect." However, that court never ruled that defendant's proffered evidence was "unfairly prejudicial" or "needlessly cumulative," nor did it rule that the evidence ought to be excluded under OEC 403.[6] Further, the trial court's express reliance on *Davis I*, in which the Court of Appeals determined that older evidence offered by the state was irrelevant, demonstrates that the trial court was concerned about the relevance of defendant's proffered evidence, not whether the court should exclude it based on a consideration set out in OEC 403. We will not speculate about how the trial court could have exercised its discretion under OEC 403 if it had chosen to do so. *See Titus*, 328 Or at 480 n 1 (refusing to speculate about how trial court could have exercised its discretion under OEC 403); *Macy v. Blatchford*, 330 Or 444, 455, 8 P3d 204 (2000) (disagreeing that trial court made OEC 403 ruling when court did not do so expressly, although it labeled evidence as "highly inflammatory" and "prejudicial").

Having decided that the trial court erred in excluding the victim's statements made before March 1996, we now must decide whether that error requires that we reverse and remand the case for a new trial. The state argues that reversal is unnecessary here because, even if the trial court erred in excluding the proffered statements of the victim, the error was a "harmless error."

The phrase "harmless error" is a shorthand reference to a legal standard, discussed below, that the Oregon Constitution requires this court to apply after determining in an appeal or on review that a trial court has erred. "Harmless error" is not a phrase that appears in the Oregon Constitution, nor is it an entirely accurate descriptor of the legal analysis that the constitution requires.

---

[6] We note that, in its ruling, the trial court mistakenly stated that the evidence was inadmissible under OEC 404 (prior bad acts). However, OEC 404 is not applicable to the evidence at issue here, because it is not evidence of the victim's prior bad acts. Rather, defendant offered evidence of the victim's prior statements regarding her obsession with defendant and suicidal threats to prove the victim's state of mind at the time of the shooting.

■ Article VII (Amended), section 3, of the Oregon Constitution states the standard that governs whether this court must affirm a conviction, despite the occurrence of legal error during the trial. That provision, which the voters adopted by initiative in 1910, provides, in part:

> "If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

Under that provision, this court must affirm a judgment, despite any error committed at trial, if, after considering all the matters submitted, the court is of the opinion that the judgment "was such as should have been rendered in the case." However, the constitutional provision does not describe how this court should determine whether the judgment was one that the trial court should have rendered. This court has discussed in prior cases the analysis that it will follow in conducting that inquiry. However, as we discuss below, our cases have not described that analysis in a consistent manner.

In *State v. McLean*, 255 Or 464, 468 P2d 521 (1970), this court examined Article VII (Amended), section 3, and stated:

> "We hold, however, in accordance with the terms and purposes of * * * the constitutional provision, that in a case in which, despite some conflict in the testimony, there is substantial and convincing evidence of guilt and the error, if any, was either so technical in nature or so unsubstantial that this court can affirmatively find, as a practical matter, that there was 'little, if any, likelihood of having changed the result of the trial',[6] this court may then, in its discretion, exercise its power to affirm the verdict and judgment of the trial court, notwithstanding the existence of such error.

---

"[6] *See Chapman v. California*, 386 US 18 at 22, 87 S Ct 824, 17 L [E]d 2d 705 (1967), as also quoted from above."

*Id.* at 478-79.

In 1973, this court revisited the statement from *McLean*, quoted above, and corrected two potentially misleading inferences in the statement, neither of which is pertinent here. *State v. Van Hooser*, 266 Or 19, 23, 511 P2d 359 (1973). The *Van Hooser* court then stated:

> "In *McLean* we laid down two requirements for affirmance despite error: (1) that there was substantial and convincing evidence of guilt; and (2) that the error committed was very unlikely to have changed the result of the trial. While in *McLean* we were of the opinion that these were a composite of the requirements of both the amendment and the statute we believe that they are reasonable criteria to use in complying with the constitutional mandate."

*Id.* at 25-26 (footnote omitted).

The foregoing statement indicates that this court in *Van Hooser* reconsidered and revised its analysis of Article VII (Amended), section 3, in *McLean*, and condensed, in a two-part test, the "reasonable criteria" that *McLean* had indicated were appropriate for use in complying with the mandate of that constitutional provision.[7] Neither *McLean* nor *Van Hooser*, however, explained whether or how the two criteria should interact. And, in regard to the first criterion (*i.e.*, whether the evidence of guilt is substantial and convincing), neither case explained how the court should engage in that determination or whether that criterion had any basis in or was a response to any of the text of Article VII (Amended), section 3.

---

[7] *McLean* and *Van Hooser* referred to statutes that, like Article VII (Amended), section 3, preclude reversal of a judgment for trial error in the absence of a demonstration that the error affected the substantial right of a party. *See Hansen*, 304 Or at 180 (citing OEC 103(1), which provides, in part, that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"); *Van Hooser*, 266 Or at 22 (citing ORS 138.230, which provides, in part, that "[a]fter hearing the appeal, the court shall give judgment, without regard * * * to technical errors, defects or exceptions which do not affect the substantial rights of the parties"). *See also Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 168, 61 P3d 928 (2003) (applying ORS 19.415(2), which provides that "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party"). Under those statutes, the analysis whether an appellate court must affirm a judgment despite trial error is similar to the analysis that Article VII (Amended), section 3, requires. This opinion addresses the proper application of Article VII (Amended), section 3, rather than all or one of those statutes, because the question whether this court's case law has followed a consistent analysis arises from cases applying Article VII (Amended), section 3.

This court turned to those issues in *State v. Hansen*, 304 Or 169, 743 P2d 157 (1987). The court in *Hansen* quoted OEC 103(1) and acknowledged that the court had held that an error at trial does not affect a substantial right of a criminal defendant under that rule of evidence if there is (1) substantial and convincing evidence of guilt and (2) little likelihood that the error affected the verdict. *Id.* at 180 (citing *State v. Miller*, 300 Or 203, 220-21, 709 P2d 225 (1985)). The *Hansen* court also stated that that interpretation of OEC 103(1) "is consistent with the standard for reversible error set forth in Article VII (Amended), section 3, of the Oregon Constitution." *Id.* The *Hansen* court then stated:

> "Although this court has in the past analyzed these two criteria separately, *see, e.g., State v. Van Hooser*, 266 Or 19, 25-27, 511 P2d 359 (1973), there is no justification for doing so, because it is apparent that the constitutional and statutory standards are fully expressed by the second criterion. Whether there was substantial and convincing evidence of guilt is not the issue; the issue is whether the error was likely to have affected the result. Of course, the less substantial the evidence of guilt, the more likely it is that an error affected the result, but that is an additional reason not to bifurcate the standard so as to require two independent inquiries."

*Id.* at 180.

The *Hansen* court, in unmistakable terms, eliminated the first of the two criteria from *Van Hooser* as an independent consideration in the court's application of Article VII (Amended), section 3. Instead, the court held, the only appropriate criterion in the application of that constitutional provision is whether the error was likely to have affected the result. In part due to that determination in *Hansen*, this court, in several cases that involved widely varying examples of asserted trial error, has held that a trial error required a new trial despite the presence of other evidence of guilt that one might characterize as substantial and convincing. *See, e.g., State v. Joslin*, 332 Or 373, 387-88, 29 P3d 1112 (2001) (reversing when trial court erred in refusing to suppress evidence that strengthened state's refutation of insanity defense; "In light of that determination, even if there were substantial and convincing evidence of defendant's guilt, we

cannot say that there was little, if any, likelihood that the error in denying defendant's motion to suppress affected the verdict."); *State v. Kitzman*, 323 Or 589, 613-15, 920 P2d 134 (1996) (competing inferences regarding whether erroneous admission of hearsay testimony was harmful to defendant presented "a close case. On balance, we are unable to hold that there is little likelihood that the error in admitting M's hearsay statements at trial affected the verdict as to the charges involving L and L2."); *State v. Langley*, 314 Or 511, 518, 840 P2d 691 (1992) (citing *Hansen* for harmless error standard; "Even though there was substantial and convincing evidence on which a reasonable jury could have found defendant guilty of the Rockenbrant murder without the evidence of the Gray murder, we cannot say that there was little likelihood that the error in admitting other crime's evidence, so pervasive in this trial, affected the verdict. * * * The extensive reliance by the state on the Gray murder in this trial could have affected the verdict and, therefore, was not harmless."); *State v. Isom*, 306 Or 587, 596, 761 P2d 524 (1988) (trial court erred in admitting defendant's statements that he deserved maximum penalty; "Although the state's case against defendant is strong even in the absence of defendant's statements, we cannot say that there was little likelihood that the error affected the verdict.").

Unfortunately, during the same period of time in which this court decided the foregoing cases, a few of this court's decisions that have discussed the application of Article VII (Amended), section 3, have cited and quoted pre-*Hansen* formulations of the constitutional test, including the bifurcated criteria that *Hansen* expressly modified. In *State v. Walton*, 311 Or 223, 230, 809 P2d 81 (1991), for example, the court quoted both the *Hansen* single-criterion formulation *and* the bifurcated two-part formulation from *Miller* and *Van Hooser*. Moreover, contrary to the message in *Hansen*, the court in *Walton* purported to examine the record and concluded "that there is substantial and convincing evidence of defendant's guilt in the record as a whole * * *." *Id.* at 231.

One later case, citing *Walton*, repeated the bifurcated test for affirmance despite error, but stated:

"Although we discuss 'harmless error' in a two-pronged analysis, it is equally permissible to truncate that analysis into a single test, *viz.*, 'whether there is "little likelihood" that [a particular error] * * * "affected the verdict." ' "

*State v. Parker*, 317 Or 225, 234 n 10, 855 P2d 636 (1993) (alteration in original) (citing, without explanation, dissenting opinion that, in turn, cited *Hansen*).

■■ Despite those erroneous references to the bifurcated criteria that *Van Hooser* had discussed, we reiterate that, in light of *Hansen*, Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict? The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling.

■■ In determining whether the error affected the verdict, it is necessary that we review the record. However, in so doing, we do not determine, as a factfinder, whether the defendant is guilty. That inquiry would invite this court to engage improperly in weighing the evidence and, essentially, retrying the case, while disregarding the error committed at trial, to determine whether the defendant is guilty. Rather, when we review the record, we do so in light of the error at issue. We ask whether there was little likelihood that the error affected the jury's verdict. We recognize that, if the particular issue to which the error pertains has no relationship to the jury's determination of its verdict, then there is little likelihood that the error affected the verdict. However, that is not a finding about how the court views the weight of the evidence of the defendant's guilt. It is a legal conclusion about the likely effect of the error on the verdict.

Returning to our analysis of this case, the question is whether, after we review the record, we can say that there was little likelihood that the erroneous exclusion of the witness statements affected the jury's verdict. We conclude that we cannot.

■ We consider first the nature of the error that occurred below. Here, the trial court erred in refusing to

admit into evidence certain statements by witnesses about the victim and her statements about defendant. Defendant offered the statements into evidence to support his factual theory: the victim was so obsessed with defendant that, on hearing his rejection of their relationship, she killed herself.

The context of the legal error also is significant. Although the ultimate issue under Article VII (Amended), section 3, will not vary—*i.e.*, whether there was little likelihood that the error affected the verdict—the court's analysis under that provision of the effect of an error may vary depending on the context of the error in question, such as error in admission of evidence, jury instructions, or other matters of trial procedure. To repeat what may be obvious, the error here occurred during a criminal trial in which the state had the burden to prove defendant's guilt beyond a reasonable doubt. Defendant had no burden of proof. Defendant's objective in offering the statements was to induce the jury to conclude that reasonable doubt existed about defendant's guilt. As we discuss below, nothing about the context of the legal error here indicates that the jury, in deciding whether the state had carried its burden of proof, would have regarded the excluded evidence as duplicative or unhelpful to its deliberations.

The state points out that the court admitted at trial other evidence of the victim's suicidal obsession with defendant and, thus, argues that the excluded statements did not affect the jury's assessment of defendant's version of events because they were merely cumulative of the admitted evidence.

The state's argument pertains to the following evidence that defendant offered and the court received into the evidentiary record: (1) Defendant's mother testified that, in the month before the victim's death, the victim had stated that, after her child's death, she did not think she could lose defendant, that she did not think she could live without defendant, and that, on the night of her death, she said that she had to bring defendant home; (2) Heidt testified that, immediately after the death of the victim's child, the victim said that she wanted to die and that she did not want to go on;

and (3) Dr. Larsen, who conducted a post-mortem psychological evaluation of the victim, testified about the content of the victim's medical records, which indicated that the victim suffered from depression and received antidepressant medication in 1994 and 1996, but was not suicidal. Defendant also testified, and Hoffman corroborated, that the victim would call defendant several times a day and would threaten Hoffman because of Hoffman's relationship with defendant.

Although some of the evidence described above indicates that the victim was depressed and obsessed with defendant, we cannot say that the excluded statements were merely cumulative of that evidence. The statements that defendant proffered were qualitatively different than the evidence that the jury heard. Nothing in the admitted evidence expressly indicated that the victim threatened to kill herself because of her relationship with defendant. Heidt testified that the victim said she wanted to die. However, the victim made that statement in reaction to the recent death of her child. The medical reports from 1994 and 1996, on which Larsen relied, did not include suicidal threats and stated that the victim did not have suicidal ideation. The older excluded statements tended to show that the victim's depression and suicidal obsession were long-term and connected to her turbulent relationship with defendant. By contrast, the victim's recent statements occurred shortly after her child's death and tended to show that she was suffering from an understandable grief for her child and a general apathy about life.

Finally, the excluded evidence goes directly to the heart of defendant's factual theory of the case. *See State v. Marrington*, 335 Or 555, 566, 73 P3d 911 (2003) ("The victim's delayed reporting was not a tangential issue, but a central factual issue in this case."). Defendant sought to show that the victim was suicidal and obsessed with defendant and that, when defendant rejected her, she shot herself. The evidence at issue here potentially was influential because it tended to complete the picture of defendant's version of the events. Defendant was entitled to prove his theory of the case by presenting relevant, admissible evidence to the jury. We cannot say, on the record before us, that there was little likelihood that the erroneous exclusion of the victim's statements made before March 1996 affected the jury's verdict. The error

could have affected the jury's determination whether there was reasonable doubt that defendant murdered the victim, as the state claimed. Because we cannot conclude, in the terms of Article VII (Amended), section 3, that the judgment "was such as should have been rendered in this case," we must reverse and remand for a new trial.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.