Argued and submitted May 29, 2014, reversed and remanded January 22, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL STEPHEN URBASCHAK,
*Defendant-Appellant.*

Multnomah County Circuit Court
130242497; A154497

342 P3d 1108

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Peenesh H. Shah, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

DUNCAN, P. J.

**DUNCAN, P. J.**

In this criminal case, defendant appeals his conviction for second-degree criminal mischief, as defined by ORS 164.354(1)(b),[1] asserting that the trial court erred by admitting evidence in violation of the "best evidence" rule, OEC 1002, which, as relevant here, provides that, "[t]o prove the content of a * * * recording * * *, the original * * * recording is required[.]"[2] The state concedes that the trial court erred but argues that the error was harmless. We agree with the parties that the trial court erred, and we conclude that, because the erroneously admitted evidence was the state's strongest evidence regarding the central factual issue in the case, the error was not harmless. Therefore, we reverse and remand.

Because the dispositive issue in this case is whether the erroneous admission of evidence was harmless, we begin by describing the procedural facts and the evidence and arguments the parties presented at trial. The state charged defendant with second-degree criminal mischief for damaging the window of a Tri-Met MAX train. There are two ways a person can commit second-degree criminal mischief: by recklessly damaging property of another in an amount exceeding $500 or by intentionally damaging the property of another. Initially, the state charged defendant with "recklessly damag[ing], in the amount exceeding five hundred dollars, the property of Tri[-M]et[.]" On the day of the trial, the state moved to amend the information to charge defendant with "intentionally [damaging] the property of Tri[-]Met." The state made the motion to amend the information because the damage to the window did not exceed

---

[1] ORS 164.354 defines second-degree criminal mischief. It provides, in part:

"(1) A person commits the crime of criminal mischief in the second degree if:

"* * * * *

"(b) Having no right to do so nor reasonable ground to believe that the person has such a right, the person intentionally damages property of another, or, the person recklessly damages property of another in an amount exceeding $500."

[2] In full, OEC 1002 provides, "To prove the content of a writing, recording or photograph, the original writing, recording or photograph is required, except as otherwise provided in [OEC 1001] to [OEC 1008] or other law." The exceptions are not applicable in this case.

$500. Defendant objected to the amendment, arguing that the amendment was a substantive change. The trial court overruled defendant's objection, granted the state's motion, and made the requested amendment to the information by interlineation.[3] Thus, at trial, the state had to prove that defendant intentionally damaged the window.

Defendant waived his right to a jury, and the state tried its case to the court. As framed by the parties' opening statements, the state's evidence, and the parties' closing arguments, the issue at trial was whether defendant intentionally damaged the window. There was no dispute that defendant had damaged the window; the only dispute was whether he had done so intentionally.

As its only witness, the state called Bowen, the transit officer who investigated the incident. Bowen testified that, on the night of the incident, he and two other transit officers boarded a MAX train to check whether passengers had paid their fares. Defendant was riding the train with a group of his friends. Although defendant had paid his fare, one of his friends, Gonzalez, had not, and the officers asked Gonzalez to exit the train to pay the fare in lieu of receiving a citation. Defendant, Gonzalez, and another companion exited the train while the rest of the group remained onboard. The train began to leave before defendant and the others could reboard.

As the train was pulling away, Bowen heard a loud bang against the side of the train, but did not see what caused the noise. Bowen noticed a spider web crack in the window that was approximately one and a half feet in diameter. Later that night, Bowen viewed the platform surveillance video recording, which showed defendant hitting the train with his hand in a fist.

Two days later, Bowen and another officer spoke with defendant at his home. The officers noticed that defendant's right hand was bruised and swollen, and they photographed it. The officers asked defendant about the window, and defendant told them that he had knocked on the window in an attempt to get the attention of his friends on the

---

[3] Defendant does not challenge the amendment on appeal.

train. Bowen told defendant that, in the surveillance video, defendant did not appear to be knocking on the window, but instead, he appeared to be striking it. Defendant then demonstrated the motion he had used when he struck the window, which Bowen described during his trial testimony as "the hammer strike motion."

Bowen testified that MAX train windows are made of tempered glass that is "very strong and resilient." Bowen did not think that a person could break through such a window accidentally.

In addition to Bowen's testimony about his interactions with defendant and the characteristics of MAX train windows, the state introduced photographs of defendant's hand and the damaged window. It also asked Bowen to describe what he saw on the surveillance video recording. Defendant objected, arguing that the "best evidence" rule required the state to introduce the video recording itself and precluded the admission of Bowen's testimony to prove its content. OEC 1002 ("To prove the content of a writing, recording or photograph, the original writing, recording or photograph is required, except as otherwise provided in [OEC 1001] to [OEC 1008] or other law."). The trial court overruled defendant's objection and allowed Bowen to testify about the content of the video recording.

Bowen, who was the only person at the trial who had seen the video recording, testified that the video shows defendant "step out, or broaden his stance, and then swing his arm in an overhand hammer strike fashion, as if he was holding a hammer and striking the train with the side of his fist." Bowen further testified that the recording shows defendant's jacket swirling from the force that defendant's body was generating before he hit the window. Based on what he knew about MAX train windows and what the recording showed regarding defendant's stance, swing, and strike, Bowen believed that defendant had probably broken his hand when he hit the window. Bowen testified that he did not believe that defendant had knocked on the window to get the attention of his friends because the video showed that defendant had "broaden[ed] [his] stance" and "use[d] [his] body mechanics to generate more power."

After Bowen's testimony, defendant made a motion for a judgment of acquittal, asserting that there was insufficient evidence that defendant had intentionally damaged the window. The state opposed the motion, asserting that a reasonable trier of fact could find that defendant intended to damage the window based on "the way he struck the glass[.]" The trial court denied the motion and ultimately convicted defendant.

As mentioned, on appeal, defendant argues that the trial court erred in admitting Bowen's testimony regarding the content of the video recording, and the state concedes that the trial court erred but argues that the error was harmless. Evidentiary error is harmless if there is "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

The state argues that erroneously admitted testimony about the content of the video recording was unlikely to have affected the verdict because it was cumulative. According to the state, even without the erroneously admitted testimony, there was evidence that defendant had hit the window and that he had done so using a "hammer-strike" motion and enough force to break the window and injure his hand. The state contends that the erroneously admitted testimony added nothing of substance to its other evidence.

Defendant counters that the erroneously admitted testimony about the content of the video was not cumulative because it was qualitatively different from the state's other evidence in that it was the most detailed evidence of the manner in which he hit the window.

We agree with defendant. The erroneously admitted evidence was not merely cumulative. Although, as the state points out, the record contains some other evidence from which a trier of fact could infer that defendant intended to damage the window, the erroneously admitted evidence was the state's strongest evidence on that issue, which was the central—indeed, the only—disputed issue at trial. The erroneously admitted evidence was different from the other evidence in that it contained more details about how defendant struck the window. Bowen, who did not see defendant hit the window in person, testified that the video shows defendant

stepping out and broadening his stance and swinging in a manner that caused his jacket to swirl from the force his body was generating. Based on the video, Bowen concluded that defendant had struck the window with enough force to break his hand and that he had not acted in a manner consistent with merely trying to get the attention of his friends. The state urged the trial court to draw the same conclusions; as mentioned, when arguing against defendant's motion for a judgment of acquittal, the state argued that a trier of fact could find that defendant intended to damage the window based on "the way he struck the glass," and the state's strongest evidence regarding that was Bowen's testimony about the content of the video.

The state's argument that Bowen's testimony that defendant demonstrated a "hammer strike" is equivalent to Bowen's description of the content of the video is not well taken. Bowen's testimony about defendant's demonstration was that, "He * * * demonstrated the hammer strike motion after *Miranda*, when I told him that the video didn't appear to be a knock. It looked more like a strike. And that's when he demonstrated to me the hammer strike fashion." Bowen did not specify whether defendant's demonstration included only arm movements or also included leg and body movements. Nor did he testify that defendant's demonstration included any indication of the amount of force with which defendant hit the window. Simply put, Bowen's description of defendant's demonstration does not contain the same details as his description of the content of the video.

Because we conclude that the erroneously admitted testimony related to defendant's intent, the central disputed issue at trial, and because that testimony was qualitatively different from other admitted evidence pertaining to defendant's intent, we cannot conclude that there is little likelihood that the testimony affected the verdict.

Reversed and remanded.