Submitted October 10, 2017, affirmed December 4, 2019, petition for review denied April 23, 2020 (366 Or 382)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHANE MICHAEL DODGE,
*Defendant-Appellant.*

Multnomah County Circuit Court
15CR47527; A162454

455 P3d 933

Defendant appeals, challenging his conviction for misdemeanor driving while under the influence of intoxicants. He contends that the trial court erred in admitting without redaction a report showing defendant's blood alcohol content and in failing to make a record of the court's exercise of discretion in weighing the probative value of the evidence against the danger of unfair prejudice under OEC 403. *Held*: The court made an adequate record of its exercise of discretion and any error in admitting the unredacted report was harmless.

Affirmed.

Steven R. Evans, Judge pro tempore.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura E. Coffin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.

EGAN, C. J.

Affirmed.

**EGAN, C. J.**

Defendant appeals from his conviction of misdemeanor driving under the influence of intoxicants (DUII), ORS 813.010, contending that the trial court erred (1) in admitting without redaction an Intoxilyzer 8000 test report showing defendant's blood alcohol content, which he contends caused him unfair prejudice; and (2) in failing to make a record of the court's exercise of discretion in weighing the probative value of the evidence against the danger of unfair prejudice under OEC 403. We conclude that the court made an adequate record of its exercise of discretion and that any error in admitting the report was harmless, and we therefore affirm.

Portland Police Officer Piombo stopped defendant for traffic violations. While conversing with defendant, Piombo noticed signs of intoxication, including slurred speech, bloodshot and watery eyes, and an odor of alcohol. Defendant admitted that he had been drinking and agreed to perform several field sobriety tests which he was not able to pass. Defendant agreed to go to the police station with Piombo to take a breath test. It is not disputed that the equipment, an Intoxilyzer 8000, was functioning properly and that the breath test showed that defendant had a blood alcohol content (BAC) of .06. Based on the Intoxilyzer results and defendant's performance of the field sobriety tests, Piombo cited defendant for DUII.

At trial, the state introduced the printout from the Intoxilyzer 8000 breath test showing that defendant's BAC at the time he took the test was .06 percent. The printout, a "Breath Test Report," looked approximately like this:

| Test | %BAC | Status | Time |
|------|------|--------|------|
| Air Blank | 0.000 | PASS | 22:04 PDT |
| Diagnostics | OK | PASS | 22:05 |
| Air Blank | 0.000 | PASS | 22:05 |
| Subject Sample | 0.074 | OBTAINED | 22:05 |
| Air Blank | 0.000 | PASS | 22:06 |
| Air Blank | 0.000 | PASS | 22:08 |

| Subject Sample | 0.066 | OBTAINED | 22:08 |
| Air Blank | 0.000 | PASS | 22:09 |
| Control Sample | 0.084 | PASS | 22:09 |
| Air Blank | 0.000 | PASS | 22:10 |

\* \* EXPECTED VALUE FOR CONTROL:  0.085 % BAC  \* \*

| **TEST RESULT:** | **0.06 % BAC** |
|---|---|

Defendant stipulated to the accuracy of the Intoxilyzer test but asked the court to "redact" digits other than the Test Result of .06 percent that he considered to be "extraneous." Defendant asserted that those numbers, in particular, the first "Subject Sample," showing a BAC of .074 percent, and the "Control Sample," showing a BAC of .084 percent, were not relevant and might mislead the jury and confuse the jury to think that defendant's BAC was greater than .06 percent. The trial court rejected defendant's request:

"THE COURT:   \*\*\* I don't see that it's prejudicial at all, especially since you can examine the officer, what does this mean, what does this mean, you can ask him about the date, you can ask him about anything you want about it. Let me see the offending document.

"[DEFENSE COUNSEL]:  It says there is one sample that's a .07 something, and there's one that's a .06 something.

"THE COURT:  Subject sample .074, then control sample .084, subject sample .066. I think that would be more worrisome to redact it than it would just to have it explained as to what this entails.

"[DEFENSE COUNSEL]:  Well, quite frankly, I think that that is cumulative because all the testimony is going to be that my client's test result was a .06. We would stipulate to that. All that's doing is putting in extra figures in front of the jury to say, hey, no, he's really .07 something, he's almost .08, so therefore, to sway the jury[.]

"THE COURT:   If [the prosecutor] argues that, we can take up a different issue. I don't see where he can be prevented from providing proof of the analysis of the blood test and the results thereof. Your objection is overruled."

The court also rejected a request by defendant to redact the third digit of the breath test sample numbers as insignificant, explaining:

> "There's nothing prejudicial here. You have not said anything that shows it's prejudicial or that it is not subject to your examination and explanation."

Defendant's counsel responded that "[t]he fact that something is subject to my examination doesn't mean that it isn't prejudicial." The court adhered to its ruling.

The court briefly addressed the jury, and then the prosecutor gave an opening statement:

> "Ladies and gentlemen of the jury, two ways for the State to meet its burden in this case. The first, show you evidence that a person's blood alcohol content exceeded .08. *This is not that case. What the evidence is going to show here is that shortly after the time he was stopped, [defendant's] blood alcohol content was .06.* The other way the State can[] prove his case is by demonstrating to you beyond a reasonable doubt that [defendant's] mental and physical capacities were adversely affected to a noticeable and perceptible degree. What you're going to hear is the testimony of Officer Mark Piombo. He is a traffic officer with the Portland Police Bureau. What that means is that he specializes purely in traffic matters, including an extensive experience with DUIs. He'll tell you that on the night in question, he pulled [defendant] over due to some bad driving and he makes contact with [defendant] and he notices [what] in his experience is indicia of intoxication, slurred speech, bloodshot, watery eyes, odor of alcohol, those sorts of things, and so he administers the field sobriety tests to [defendant], and he'll go into great detail about each of the three tests, what they are, how they are administered and specifically what [he] is looking for. He'll testify that [defendant] failed all the tests. Then he takes him back to the station and *he administers the breath test [and] the result is a .06.*"

(Emphases added.) In his opening statement, defense counsel stated: "You will hear testimony that *my client's blood alcohol level was .06* and that is basically 75 percent of what the legal limit is, that .08 is the legal limit." (Emphasis added.)

Officer Piombo then testified that he stopped defendant after a Lidar speed detection device clocked defendant's vehicle traveling on Interstate 205 at a speed of 83 and 84 miles per hour in a 55-miles-per-hour zone. Piombo testified that he then pursued defendant's vehicle on his motorcycle and observed defendant repeatedly change lanes and tailgate another vehicle. Piombo activated his emergency lights. Defendant did not immediately pull over but did so after Piombo activated his siren. Piombo testified that he observed physical signs of intoxication on defendant and smelled an odor of alcohol about defendant's person, coming from his mouth as he spoke. At a close distance, Piombo observed that defendant's eyes were watery, pink, and red, and that his speech was thick and slurred. Defendant agreed to perform some field sobriety tests, and Piombo administered three tests that defendant failed. Defendant admitted that he had consumed alcoholic beverages. Defendant agreed to Piombo's request to go to the police station for a breath test, which, as noted, indicated a blood alcohol level of .06 percent.

Piombo testified about the Intoxilyzer report of defendant's BAC. On cross-examination by defense counsel, Piombo testified:

"[DEFENSE COUNSEL]:   Okay. There's a lot of different numbers there, right?

"A.   Yes.

"Q.   And they are very standard for that Intoxilyzer machine. I mean, that's a standard print out?

"A.   Correct.

"Q.   The only numbers that matter are the two to the right of the decimal point, correct? I'm sorry, I'm pointing right there at the test result.

"A.   Yeah.

"Q.   The test result answer is really all that matters on that sheet, right? Wait. I'm sorry. Strike that. Back up.

"A.   Everything matters.

"Q.   Every number matters. There are several things[]
in there where it goes through a test of itself and all that to
make sure it's working right.

"A.   Yes sir.

"Q.   At the result that we get, the .06, we only go to two
decimal points, right?

"A.   Yes.

"Q.   And that's the only significant digits there are.
There is no third significant digit or anything of that
nature?

"A.   Correct.

"Q.   Okay. So his test result is a .06.

"A.   Correct.

"*****

"Q.   Now, there are two samples taken of my client's
blood; is that correct, of his breath?[1]

"A.   Yes, sir.

"Q.   And there's a slight difference in them, right?

"A.   Yes, there is.

"Q.   But the correct operation of that machine means
that you take the one that is the .06; is that correct?[2]

"A.   If it underlines the test result.

"Q.   And there is a difference between the two results
there?

"A.   Yes.

_____

   [1] OAR 257-030-0105(1) provides that "[t]wo valid breath samples, provided
within a single testing sequence and culminating in a printed report with a com-
pleted test result shall constitute a 'Chemical Test' of a person's breath."

   [2] Under OAR 257-030-0140,

   "[a]greement between two valid breath samples within a testing sequence
   is established when the subject sample measurements agree within plus or
   minus ten percent of their mean, inclusive of the upper and lower bounds of
   the range. If the instrument establishes agreement, the lower breath sample
   measurement shall be truncated to two decimal places and reported as the
   chemical test result. If the subject sample measurements do not agree, the
   instrument will abort the testing sequence and display 'Sample Correlation
   Failure.'"

"Q. And [they're] taken, what three minutes apart?

"A. No, less than that.

"Q. Right. So taken very close together in time, right?

"A. Yes.

"Q. And yet you're never going to get exactly the same result twice in a row, are you, or very rarely will you get the exactly the same results?

"A. That's correct.

"Q. So the machine result which we have *** to be accurate is .06, right?

"A. Yes, sir.

"Q. So those other digits and everything else are not significant for the result itself, only to show that the machine is working properly.

"A. That is correct."

In closing argument, the prosecutor led off:

"As I told you in my opening, this is a case where the State's evidence is that the blood-alcohol level is below .06 and that therefore in order to prove our case, we'd have to establish beyond a reasonable doubt that [defendant's] mental or physical faculties were impaired to a noticeable and perceptible degree."

In his closing argument, defendant's counsel stated, "The hard evidence that we have is that my client's breath alcohol, blood-alcohol level was .06. They probably still lose because the one objective piece of evidence is my client was below the legal limit."

The court instructed the jury:

"If you find beyond a reasonable doubt that the amount of alcohol in [defendant's] blood at the time [defendant] was driving a vehicle was equal to or greater than .08 percent by weight of alcohol as shown by chemical analysis of [defendant's] breath or blood, this constitutes being under the influence of an intoxicant. If you find that the amount of alcohol in [defendant's] blood at the time [defendant] was driving the vehicle was less than .08 percent by weight of alcohol as shown by a chemical analysis of [defendant's]

breath or blood, then you may consider this with any other evidence in the case to determine if [defendant] was under the influence of an intoxicant.

"It is up to you to determine what weight you will give to breath test evidence. You are not required to accept such evidence. You should give the breath test evidence such weight as you feel is appropriate in reaching your verdict."

The jury reached a verdict of guilty on the DUII charge, and defendant appeals from the judgment of conviction, assigning error to the trial court's admission of the unredacted breath test report showing samples other than the result of .06 percent BAC. He does not contend on appeal that the evidence was irrelevant. Instead, he contends that the record does not show that the trial court weighed the probative value of the evidence against the danger of unfair prejudice, as required by OEC 403.[3] He further argues that the unredacted breath samples were misleading, because they invited the jury to infer that defendant's BAC was higher than .06 percent.

Defendant's objection below was that the report in its unredacted form would not be helpful to the jury, would be cumulative, would be confusing, and might be misleading. We agree with defendant that those objections were within OEC 403 and required the court to address whether the probative value of the evidence is outweighed by the danger of unfair prejudice. The court responded that it would be "more worrisome to redact than it would be just to have it explained as to what this entails." In denying the request for redaction, the trial court explained, "There's nothing prejudicial here. You have not said anything that shows that it's prejudicial or that it is not subject to your examination and explanation." Defendant's counsel responded, "The fact that something is subject to my examination doesn't mean that it isn't prejudicial."

_____

[3] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

On appeal, defendant relies on *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987), to contend that the trial court erred in failing to make a record to reflect its exercise of discretion in weighing the probative value of the evidence against the danger of unfair prejudice.[4] We reject the contention. In *State v. Anderson*, 363 Or 392, 406, 423 P3d 43 (2018), decided after the parties submitted their briefs, the Supreme Court said:

> "[T]his court has not held that a trial court must recite on the record how it evaluated the probative and prejudicial value of evidence and how it balanced the two. Rather, as [*State v. Turnidge (S059155)*, 359 Or 364, 374 P3d 853 (2016),] demonstrates, a court will make a sufficient record under *Mayfield* if the trial court's ruling, considered in light of the parties' arguments, demonstrates that the court balanced the appropriate considerations."

Thus, a trial court need not explicitly describe its process of evaluating and balancing the probative value and danger of prejudice. The record need only demonstrate that it did so.

As the quoted colloquy above reflects, the trial court here identified the probative value of the challenged portions of the BAC report as the state's "proof of the analysis of the blood test and the results thereof." And the trial court heard defendant's concerns about confusing the jury and twice stated that defense counsel could address those concerns by inquiring of the witness during testimony. The court then concluded that the challenged portions of the BAC report were not prejudicial, and defendant did not raise any issue at trial concerning the sufficiency of the court's explanation of its ruling. *See Anderson*, 363 Or at 410 ("[T]he absence of a request for further explanation was a factor that bore on the sufficiency of the explanation that the trial court provided."). In those circumstances, we conclude that the court did not need to further address its weighing of the probative

---

[4] The state contends that defendant's arguments are not preserved. Although defendant did not specifically request that the court evaluate the evidence under OEC 403, we agree with defendant that his objections were the types that are within OEC 403 and that would implicitly require the court to engage in OEC 403 balancing.

value of the evidence and the danger of unfair prejudice, and that the trial court's ruling, in light of the parties' arguments and the record, sufficiently reflects that the court balanced the appropriate considerations.

We conclude, further, that the trial court's failure to redact the report, even if error, was harmless. The prosecutor and defense counsel each separately described the breath test report as showing a breath test result of .06 percent. Piombo testified that defendant's BAC was .06 percent. On cross-examination, Piombo explained the significance of the other numbers on the report by agreeing with defense counsel's statement that the "test result is a .06" and that the other numbers were on the report only to show that the machine was working properly. In light of that testimony, any possible error in failing to redact the numbers from the report had little likelihood of affecting the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

Affirmed.