No. 290        May 1, 2024        433

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHASTA LEE OBERSINNER,
*Defendant-Appellant.*

Deschutes County Circuit Court
21CR31897, 21CN03342, 21CN04754;
A177363 (Control), A177362, A177364

Bethany P. Flint, Judge.

Argued and submitted February 26, 2024.

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. On the brief were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and John Evans, Deputy Public Defender, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

In this consolidated criminal appeal, defendant appeals from a judgment of conviction and two contempt judgments. Her first assignment of error challenges the trial court's ruling denying her request for a legal advisor. Her second and third assignments of error challenge her conviction for stalking. For the following reasons, we affirm.

*Denial of request for a legal advisor.* In her first assignment of error, defendant argues that the trial court improperly "denied defendant's request for a legal advisor based on the mistaken belief that it lacked authority to appoint one." Although we observe that defendant requested an "assistance advisor" and "assistant advisor," we do not need to decide whether this issue is preserved or whether the trial court erred, because any error is harmless. After the court denied defendant's request, the state raised a question about defendant's competency to stand trial. Defendant accepted a court-appointed attorney to advise her on that issue and then accepted counsel's representation for trial. Given that defendant changed her mind about her request, there is little likelihood that the trial court's denial of her request had any effect on the proceedings. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (an error is harmless, and thus not a basis for reversal, where there is "little likelihood that the error affected the jury's verdict").

*Stalking charge.* In her second and third assignments of error, defendant argues that the trial court erred when it denied her motion for judgment of acquittal and entered a judgment of conviction on the stalking charge because the evidence was insufficient to demonstrate that she knowingly alarmed the victim, B. We disagree.

"We review the denial of a motion for a judgment of acquittal by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt." *State v. Fuller*, 303 Or App 47, 48, 463 P3d 605 (2020) (internal quotation marks omitted).

As relevant to this appeal, the state was required to establish that defendant "knowingly alarm[ed] or coerce[d]" B by "engaging in repeated and unwanted contact" with him. *See* ORS 163.732(1) (providing the elements of the crime of stalking). A person acts knowingly when the person "acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." ORS 161.085(8). Alarm means "to cause apprehension or fear resulting from the perception of danger." ORS 163.730(1).

Here, the record contained sufficient evidence from which a trier of fact could determine that defendant knowingly created a perception of danger that caused B apprehension or fear. B testified that he had been defendant's probation officer for about 10 months when defendant began sending him inappropriate correspondence, including a falsified marriage certificate between defendant and B, and sexually explicit letters. Defendant's inappropriate correspondence prompted defendant's transfer to a different probation officer, and she was instructed to stop contacting B and to direct all contact to the new probation officer. Despite those instructions, defendant continued to send B text messages, obtained his home address, and proceeded to send him additional correspondence there.

After defendant sent B additional text messages, he again told her that she was prohibited from contacting him "due to you crossing professional boundaries and sending inappropriate material to me." Nonetheless, defendant went to B's home three days in a row—the basis of the stalking charge—and left correspondence and items on his doorstep. On one of those occasions, defendant left her car in B's driveway, which blocked one of his vehicles from exiting. Defendant later sent B a letter that stated, "For a variety of reasons, I clung to you" and "I'm very sorry for any discomfort I gave you if any."

B also testified that he supervised the mental health caseload and that he had reviewed defendant's criminal history in order to supervise her. Specifically, he was aware that she had been convicted of several crimes, including strangulation, fourth-degree assault, and assault on a

public safety officer, and that she used methamphetamine. He also knew that she was receiving mental health treatment and that she had trespassed at her son's school and foster care provider's home. That testimony created a reasonable inference that defendant was aware that B knew about her criminal history and her mental health history, including the delusional beliefs that led her to reference B as her son's father and involve B in custody matters.

On those facts, a rational trier of fact could find that defendant acted with the awareness that her conduct created a perception of danger for B. The trial court did not err in denying defendant's motion for judgment of acquittal and entering the judgment of conviction.

Affirmed.