664 April 9, 2025 No. 327

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CARLOS EVENCIO HURTADO,
*Defendant-Appellant*.

Washington County Circuit Court
21CR12813; A181475

Eric Butterfield, Judge.

Submitted January 9, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals a judgment of conviction for first-degree sexual abuse, ORS 163.427, arguing that the trial court erred by preventing defendant from cross-examining the complainant's mother regarding the complainant's character for honesty, aggression, and "clinginess." However, as explained below, the court did not prevent defendant from cross-examining the mother on those subjects. Rather, the court sustained an objection to a question that called for the mother to recount her own out-of-court statement, which would have been hearsay. The court did not err in sustaining that objection, and it did not prevent defendant from asking further questions. We therefore affirm.

Defendant was charged with first-degree sexual abuse of his daughter, A, who was eight years old at the time of the alleged abuse. Before trial, the parties litigated a number of issues, including the state's motion *in limine* on the admissibility of testimony by witnesses from the Department of Human Services (DHS) and records that had been subpoenaed from DHS. The state anticipated that the witnesses would offer prohibited character evidence and sought a ruling "on the admissibility of the family's DHS history." The state contended that "in this case the defense may only offer evidence of the victim's character in the form of reputation or opinion and it must relate to a pertinent character trait"—specifically, A's character for truthfulness.

Defendant filed a response that included an offer of proof and legal argument. In the offer of proof, defendant explained that he "seeks to admit evidence of [A's] interest and motive in fabricating the allegation against [defendant], and testifying to the same at trial," including that A's mother, G, had described A as "codependent and 'clingy'" and had "described that [A] 'manipulates' when trying to get what she wants."

During a hearing before trial, the court considered and resolved many of the pretrial motions, but it did not fully address the admissibility of evidence of A's family history or A's character traits. The court confirmed that G was going to testify and stated,

"All right. Well, I certainly intend to allow the defense to mount a defense, and that can include the fact that the child, you know, had some distress, chaos, et cetera in her life.

"It seems to me like you might be able to get that in through [G] by asking her some basic questions. We're not going to get very far into specifics. And I'm guessing that a fair amount of the DHS, if you try to do it through [a DHS agent], would be—would end up being hearsay and objectionable for that reason.

"So I'm going to hold off on a ruling on the DHS witness and hope that [defense counsel] can get [G] to acknowledge some basics about the information, and we will have to revisit that at a later date as well."

On the morning of trial, the prosecutor noted that issues about the family's DHS history had been "tabled" but was concerned that defendant might refer to some of that information during opening statements. The court inquired about what defendant intended to address during his opening, and defendant stated that he was planning to discuss general information about the family's history—A's father (defendant) moving out, her parents separating, her mother filing for divorce, and her mother's new relationship. The prosecutor stated that she was "okay with that" but "[t]here was some of the stuff in the offer of proof which I wasn't with—okay with, so talking about the child and lying and previous incidents and manipulating to get what she wants." Defendant responded that he would argue that A "desperately wanted her mother's attention," which the court said was "fair game." The parties did not further discuss the DHS history at that time or the admissibility of evidence regarding A's lying or manipulation.

A, who was 10 years old at the time of trial, was the state's first witness, and she testified that defendant had touched her vagina during an overnight visit with him. The state then called G, as anticipated. During cross-examination, defendant questioned G about an aspect of A's family history involving abuse investigations—specifically, her response to an intake form at CARES Northwest, an abuse assessment center. That questioning yielded the following exchange:

"[DEFENSE COUNSEL]:   When you went to CARES Northwest, did they have you fill out an intake form?

"[G]:   Yes.

"[DEFENSE COUNSEL]:   And is it true that on that intake form, you reported concerns about [A] with clinging, lying, and aggression?

"[PROSECUTOR]:   Objection.

"THE COURT:   Objection is sustained.

"You don't have to answer the question.

"Your next question, [defense counsel].

"[DEFENSE COUNSEL]:   What is the basis of the objection so that I can respond?

"THE COURT: You can ask your next question, [defense counsel].

"[DEFENSE COUNSEL]:   Nothing further."

The jury ultimately found defendant guilty as charged. On appeal, defendant raises three assignments of error, all arising out of the court's ruling sustaining the prosecutor's objection during cross-examination of G. Defendant characterizes the ruling as preventing defendant from cross-examining G as to A's character for honesty (first assignment); character for aggression (second assignment); and character for "cling[iness]" (third assignment). According to defendant, G's "opinion that [A] was clingy, untruthful, and aggressive * * * supported an inference that [A] fabricated the allegation of touching and continued [to] lie in her trial testimony," and the exclusion of that testimony was prejudicial considering that the case turned on A's credibility.

This case would be easier to resolve if the trial court had identified the basis for the state's objection and articulated the basis for its ruling when defendant asked it to do so. *Cf. State v. Colby*, 295 Or App 246, 251, 433 P3d 447 (2018) (holding that, giving a trial court's role in facilitating meaningful appellate review, a court "cannot refuse to disclose the legal principles that it has applied in construing the elements necessary to adjudicate guilt, when a defendant properly raises that issue"). Although that failure has

complicated our task as a reviewing court, we conclude that it did not result in reversible error, considering (1) that the question was patently objectionable on the basis that it asked for hearsay and (2) the hearsay answer to the question would not have had any likelihood of affecting the jury's verdict.

Although defendant characterizes the court's ruling as having broadly excluded opinion testimony, that is not what happened. The question that was asked—whether it was true that, on the CARES intake form, G had reported concerns about A "with clinging, lying, and aggression"—did not call for G's opinion as to those character traits; it called for her to attest to a prior report. G's prior out-of-court report would not have been admissible to prove that she did, in fact, have concerns about A with clinging, lying, or aggression. As the state points out (and defendant does not argue otherwise), her prior out-of-court statement would have been inadmissible if offered for the truth of its contents. *See* OEC 801(3) (defining "hearsay" as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"); *see also* OEC 802 ("Hearsay is not admissible except as provided in ORS 40.450 to 40.475 or as otherwise provided by law."). As a substantive matter, the trial court did not err in sustaining the objection to that specific question, which was the only issue before the court at that time.

The court's ruling as to that one question did not, as defendant argues, preclude him from asking other questions or inquiring as to G's opinion as to A's character traits. While the trial court's response to defendant's question about the objection may have introduced a degree of uncertainty about the ruling, it did not convert the ruling on a particular question into a blanket exclusion of opinion evidence as to A's character traits. Nothing in the court's previous rulings or discussions pretrial suggested that the court's ruling on the objection should be viewed so broadly, and neither the parties nor the court treated it that way going forward. For instance, later in the trial, the court expressly stated, in the context of testimony by A's grandmother, "I agree that the, you know, character for truthfulness is always appropriate assuming you can lay an appropriate foundation."

Furthermore, defendant was allowed to ask A's grandmother whether she "ever notice[d] any clinginess with [A] and her mother," and the court even overruled the state's objection to defendant asking A's grandmother "what sort of things did you observe that you would describe as clingy."

Finally, even if we were to assume that the trial court erred as a procedural matter in failing to explain the basis for its ruling, any error would have been harmless on this record. As explained above, the question at issue did not call for opinion testimony from G but, instead, asked for a yes or no answer about what G had reported on an intake form. An affirmative answer to that question would not have supplied the jury with G's opinion about A lying, being clingy, or aggressive; rather, it would have relayed to the jury the fact that G had identified those concerns about A in the context of an abuse assessment intake. For the reasons explained above, that answer would have been subject to a hearsay objection if offered for its truth; and, even if not stricken, the answer would not have provided any context for the nature of the concerns. And, as noted earlier, the lack of explanation did not cut off further questioning in the way that defendant asserts. Under those circumstances, any procedural error in sustaining an objection to the question would have had little likelihood of affecting the jury's verdict.[1] *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) ("Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" In conducting that inquiry, we assess "the possible influence of the error on the verdict rendered, not whether this court, sitting as a fact-finder, would regard the evidence of guilt as substantial and compelling.").

Because the court did not err in sustaining an objection to a question that called for hearsay testimony, and because the court's ruling did not otherwise limit defendant's inquiry into G's opinion as to A's character traits in the way that defendant contends, we affirm.

Affirmed.

---

[1] Defendant has not suggested that he was denied due process or a fundamentally fair trial as a result of the trial court's failure to articulate the basis of its ruling, but that is a risk that a trial court runs when it refuses to tell a party why it ruled as it did.