Argued and submitted August 31, decision of Court of Appeals reversed, judgment of circuit court reversed in part and remanded to circuit court for further proceedings October 22, 1992

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## STACEY SCOTT PHILLIPS,
*Petitioner on Review.*

(CC 90C-20585; CA A69963; SC S39138)

840 P2d 666

Jesse Wm. Barton, Deputy Public Defender, Salem, argued the cause and filed the petition for petitioner on review. With him on the petition was Sally L. Avera, Public Defender, Salem.

Ann Kelley, Assistant Attorney General, Salem, argued the cause and filed the response for respondent on review. With her on the response were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson, Chief Justice, and Peterson, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GRABER, J.

## GRABER, J.

This criminal case involves the admissibility of certain out-of-court statements of a child victim of sexual abuse. The trial court ruled that the child, who was four years old at the time of trial, was unavailable as a witness. The court received the child's statements that defendant sexually abused her but excluded the child's statements offered by defendant as impeachment. After trial to the court, defendant was found guilty of sexual abuse in the first degree. ORS 163.425 (1989).[1] The Court of Appeals affirmed his conviction without opinion. *State v. Phillips*, 112 Or App 158, 827 P2d 1373 (1992). We reverse the decision of the Court of Appeals and the judgment of the circuit court and remand the case to the circuit court for further proceedings.

Defendant is the stepfather of the victim. The child's mother was married to the child's natural father; they divorced and were awarded joint custody of the child. The child's mother and defendant began living together in July 1989 and married in December 1989. The child's natural father also remarried. After her parents divorced, the child spent part of each week with her mother and defendant, and part with her natural father and his present wife.

Between late October 1989 and March 1990, the child reported on several occasions to her natural father, his wife, and his wife's mother (who frequently cared for the child) that defendant had touched her genital area. At some point during this period, the natural father informed the child's mother of the allegation. In March 1990, shortly after

---

[1] ORS 163.425 (1989) provided in pertinent part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact; and

"(A) The victim is less than 12 years of age[.]

"* * * * *

"(2) Sexual abuse in the first degree is a Class C felony."

The statute has been renumbered as ORS 163.427 and amended to designate the felony as Class B. Or Laws 1991, ch 830, § 3.

Defendant also was charged with rape in the first degree, ORS 163.375, and sodomy in the first degree, ORS 163.405. The sodomy charge was dismissed before trial. During trial, the court granted defendant's motion for a directed verdict of acquittal on the rape charge.

the child's third birthday, the child's natural father reported the allegation to Salem police and had the child examined by a physician. Defendant was questioned by the police but denied abusing the child. The police also interviewed the child.

The trial court found that the child was unavailable to testify because of "fear or similar reasons" and that there was corroborative evidence both of sexual conduct and of defendant's participation in that conduct. The court ruled that the child's hearsay statements to other witnesses would be admissible under the exception for statements made for purposes of medical diagnosis or treatment, OEC 803(4),[2] and under the exception for statements made by a child victim of sexual misconduct, OEC 803(18a)(b).[3] Defendant does not challenge the trial court's finding of the child's unavailability, nor does he challenge the admissibility of any of the child's statements that were received in evidence.

Defendant waived his right to a jury trial and received a bench trial. The child's natural father, his wife's

---

[2] OEC 803(4) provides:

"The following are not excluded by [OEC 802, the rule against hearsay], even though the declarant is available as a witness:

"* * * * *

"(4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause of [sic] external source thereof in so far as reasonably pertinent to diagnosis or treatment."

[3] OEC 803(18a)(b) (1991) provided in pertinent part:

"The following are not excluded by [OEC 802], even though the declarant is available as a witness:

"* * * * *

"(b) A statement made by a child victim who is under 10 years of age, which statement describes an act of sexual conduct performed with or on the child by another, is not excluded by [OEC 802] if the statement is offered as evidence in a criminal trial or a juvenile court proceeding and if the child either testifies at the proceeding and is subject to cross-examination or is unavailable as a witness and if the proponent of admissibility establishes to the satisfaction of the court outside the presence of the jury, if any, that the time, content and circumstances of the statement provide substantial indicia of reliability. However, when the child is unavailable as a witness, the statement may be admitted in evidence only if there is corroborative evidence of the act of sexual conduct and of the defendant's participation in the conduct. * * * For purposes of this paragraph, * * * the child shall be considered 'unavailable' if the child has a substantial lack of memory of the subject matter of the statement, is presently incompetent to testify, is unable to communicate about the offense because of fear or other similar reason or is substantially likely, as established by expert testimony, to suffer lasting severe emotional trauma from testifying."

mother, the physician who examined the child, and the Salem police detective who interviewed the child all testified to the child's statements regarding defendant's sexual conduct toward her. In addition, medical evidence established that the child had been subjected to sexual abuse by someone.

The child's mother — defendant's wife — testified for the defense. During her testimony, the following exchange took place:

"[DEFENSE COUNSEL]:  And then what happened?

"[WITNESS]:  Then I asked [the child] if [defendant] had hurt her.

"[DEFENSE COUNSEL]:  What did she say?

"[WITNESS]:  She looked down to the floor and her eyes started to water and she said her daddy told her she had to say bad things about [defendant] in court."

Shortly thereafter, the prosecutor objected to "questions about what [the child] purportedly said to [her mother]," on the ground that such statements were hearsay. Defense counsel responded that the mother's testimony was intended to impeach the hearsay declarant, the child. Before ruling on the prosecutor's objection, the court recessed the proceedings for a week because of a scheduling conflict.

When the trial resumed, defense counsel again argued that, because the child was unavailable for cross-examination, defendant should be permitted to use the mother's testimony

"strictly on [an] impeachment basis * * * [. W]e are seeking to show that she has recanted or attempted to recant * * *[. O]ur inability to cross examine [the child] * * * should not remove from us — from the defense side the ability to introduce evidence which shows that she impeached herself and/or recanted."

The court sustained the objection to the introduction of additional testimony from the mother regarding the child's statements and granted the state's motion to strike the testimony quoted above.

At the close of trial, the court found defendant guilty of sexual abuse in the first degree. On review, defendant

argues that the exclusion of the child's statements was erroneous under OEC 806, the text of which is set out below, and that the exclusion of those statements violated his constitutional right of confrontation[4] and his federal due process right.[5] He also argues that the error of excluding the evidence was prejudicial.

The state asserts that the claim of statutory error was not preserved for appeal, because defendant made an insufficient offer of proof, and that his constitutional arguments were not preserved, because they were not presented to the trial court. The state also argues that any error in excluding the statements was harmless.

We first consider whether defendant preserved his claim of error under the Oregon Evidence Code. OEC 103(1)(b) provides:

"Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

"* * * * *

"(b) In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

Thus, the offer of proof must demonstrate the content of the evidence sought to be admitted. *State v. Olmstead*, 310 Or 455, 459-60, 800 P2d 277 (1990). As this court stated in *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988):

"Article VII (Amended), section 3, of the Oregon Constitution requires this court to affirm judgments of lower courts

---

[4] Article I, section 11, of the Oregon Constitution provides in part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * *."

The Sixth Amendment to the Constitution of the United States provides in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

[5] The Fourteenth Amendment to the Constitution of the United States provides in part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law * * *."

if, in the opinion of this court, the judgment achieved the correct result, even if error was committed. That constitutional provision makes it incumbent on lower courts and the parties appearing in lower courts to ensure that the record reviewed by this court is adequate for this court to make a reasoned decision.''

*See also State v. Olmstead, supra,* 310 Or at 461 (two purposes of an offer of proof are to ensure that the trial court can make an informed decision on the evidence sought to be admitted and to ensure that appellate courts are able to determine whether the trial court's ruling was erroneous).

■ The state's first argument concerning preservation of error is that defendant's offer of proof did not adequately demonstrate the content of the excluded evidence. One method of making an offer of proof is by question and answer. It also is acceptable, however, for a party's counsel to state what the proposed evidence is expected to be. *See State v. Affeld, supra,* 307 Or at 128 (suggesting that both methods are appropriate, depending on the circumstances).

■ Here, defense counsel used both methods. He first elicited one statement by means of a question and answer. When the prosecutor objected to further questions on that topic, counsel explained that he sought to elicit two additional impeaching or ''recanting'' statements by the child. In context, it was apparent that the two additional statements would be similar to the one elicited by means of a question and answer. Accordingly, the offer of proof was sufficient to demonstrate the content of the evidence sought to be admitted.

■ The state further contends that defendant did not preserve error, because he did not cite a specific section of the Oregon Evidence Code in support of his position at trial. *See* ORAP 5.45(2) (generally, matter assigned as error will not be considered on appeal unless preserved in the lower court). That level of specificity was not required in the circumstances. *See State v. Hitz,* 307 Or 183, 188, 766 P2d 373 (1988) (raising an *issue* at trial ordinarily is essential; identifying a *source* for a claimed position is less so; making a particular *argument* is even less so). Defendant raised the proper issue by telling the trial court specifically that he sought to introduce the child's additional statements as

"impeachment" evidence. Defendant generally identified the source for his position by discussing the Oregon Evidence Code. That was enough to preserve the claimed error for appellate review.

Third, the state argues that defendant did not make clear whether the evidence was being offered for a hearsay or a non-hearsay purpose. We disagree. Counsel told the court: "I argue that this is admissible strictly on impeachment basis[.]" The fact that defendant also argued, in the alternative, that the statements were admissible under the "catch-all" hearsay exception, OEC 803(25),[6] does not make the first argument unclear or insufficient.

Defendant preserved his claim of error under the Oregon Evidence Code. Therefore, we turn to the merits of that claim.

OEC 806 provides in part:

"When a hearsay statement * * * has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if the declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the hearsay statement of the declarant, is not subject to any requirement under [OEC 613][7] relating to impeachment by evidence of inconsistent statements."

---

[6] OEC 803(25) provides in part:

"The following are not excluded by [OEC 802, the rule against hearsay], even though the declarant is available as a witness:

"* * * * *

"(25a) A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that:

"(A)    The statement is relevant;

"(B)    The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

"(C)    The general purposes of the Oregon Evidence Code and the interests of justice will best be served by admission of the statement into evidence."

Defendant does not renew that argument before this court.

[7] OEC 613 provides in part:

"(1) In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its

The function of OEC 806 is to allow impeachment of a hearsay declarant[8] just as if the declarant had testified as a witness. As the Commentary to OEC 806 states:

> "The declarant of a hearsay statement that is admitted into evidence is in effect a witness. Therefore, in fairness, the declarant's credibility should be subject to impeachment (and to rehabilitation) as if the declarant had in fact testified. See [OEC] 608 to 609-1."[9]

■ The state concedes that the statements offered by defendant, if inconsistent, were admissible as impeachment under OEC 613 and 806. It argues, however, that the statements were not inconsistent and thus were not admissible. The state's exclusive focus on inconsistency is misplaced, and we do not decide this case under OEC 613. Prior inconsistent statements under OEC 613 are only one kind of impeachment evidence addressed in OEC 806. OEC 806 is not so limited, and the Commentary, by referring to OEC 608 to 609-1, expressly suggests the availability of other kinds of impeachment evidence.

The statement about which the mother testified is subject to at least two interpretations. The state argues that the statement meant that the natural father told the child that she would be required to testify in court about the bad things that had happened to her. Defendant argues that the child's statement meant that her natural father had told her to lie. The inference for which defendant argues would be a permissible one for the trier of fact to draw; the child's statement thus could show bias or interest.

---

contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(2) Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."

[8] OEC 801(2) defines a "declarant" as "a person who makes a statement."

[9] Although we are not bound by the Commentary prepared by the drafters of the Oregon Evidence Code, we recognize it as useful guidance. *State ex rel Davey v. Frankel*, 312 Or 286, 293 n 5, 823 P2d 394 (1991); *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 179, 818 P2d 1270 (1991); *State v. McClure*, 298 Or 336, 344, 692 P2d 579 (1984).

Thus, the pertinent form of impeachment in this case is described in OEC 609-1(1), which provides:

"The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest. However, before this can be done, the statements must be related to the witness and the conduct described, with the circumstances of times, places and persons present, and the witness shall be asked whether the witness made the statements or engaged in such conduct, and, if so, allowed to explain. If the statements are in writing, they shall be shown to the witness."[10]

The Commentary to OEC 609-1 explains that "bias" takes the form of friendly feeling or hostility toward a party, while "interest" commonly takes the form of having a stake in the outcome of the litigation. Professor McCormick writes that

"[p]artiality, or any acts, relationships or motives reasonably likely to produce it, may be proved to impeach credibility. While the Federal Rules of Evidence does not in terms refer to attacking the witness by showing bias, interest, corruption, or coercion, it clearly contemplates the use of [those] methods of impeachment." McCormick, Evidence 130-31 (4th ed 1992) (footnotes omitted).[11]

*See also* Kirkpatrick, Oregon Evidence 377 (2d ed 1989) (bias may be shown by family relationship or by a showing of a motive to curry favor with a party). The testimony that defendant sought to introduce here purports to include elements of relationship, motive, and coercion and may have led to a showing of bias or interest on the part of the child.

■ As noted above, OEC 806 provides that, if a hearsay declarant is impeached by evidence of prior inconsistent statements, the requirement of OEC 613(2) that the hearsay declarant be given an opportunity to explain or deny the

---

[10] As this court noted in *State v. Brown*, 299 Or 143, 150, 699 P2d 1122 (1985): "Completely aside from OEC 609-1, bias due to friendship, family relationship, etc., and interest in the form of [*sic*: or] amount of expert witness fees, etc., continue to be viable forms of impeachment even though no conduct or statement is involved." In the present case, OEC 609-1 applies, because defendant sought to attack the credibility of the hearsay declarant by evidence that the witness "engaged in conduct or made statements" showing either bias or interest.

[11] Although the Federal Rules of Evidence do not explicitly address this mode of impeachment, impeachment by bias is permitted by federal case law. *United States v. Abel*, 469 US 45, 49-51, 105 S Ct 465, 83 L Ed 2d 450 (1984).

statements does not apply. OEC 806 is silent as to whether the analogous requirements of OEC 609-1(1), relating to impeachment by evidence of conduct or statements showing bias or interest, apply when a party wishes to impeach a hearsay declarant.

In discussing why the foundation requirement of OEC 613(2) does not apply under OEC 806, the Commentary notes that,

> "[i]f the court insists on the usual rules for impeachment by inconsistent statements in a hearsay situation, it must deny the [impeaching party], who is already barred from cross-examination [of the unavailable hearsay declarant], any benefit of [the] important technique [of impeachment]."

The Commentary also considers the impact of foundation requirements on impeachment that consists of former testimony, admissible under 804(3)(a),[12] finding that such requirements "may impose an undue burden." The Commentary states that, "[f]or [such] reasons, the Legislative Assembly dispensed with the foundation requirement in *all* hearsay situations, leaving a rule which is readily administered and fair." (Emphasis added.) We conclude that the legislature did not intend that testimony impeaching a hearsay declarant by evidence that the declarant engaged in conduct or made statements showing bias or interest be subject to the foundation requirements of OEC 609-1(1), and we hold that those foundation requirements do not apply to impeachment of a hearsay declarant.

■ The excluded evidence was not hearsay, because it was not offered for the truth of the matter asserted. *See* OEC 801(3) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

---

[12] OEC 804(3)(a) provides:

"The following are not excluded by [OEC 802, the rule against hearsay] if the declarant is not available:

"(a) Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination."

asserted"). Rather, it was a recognized type of impeachment evidence, OEC 609-1(1), offered by defendant for the sole purpose of casting doubt on the credibility of the hearsay declarant, the unavailable child witness. As such, it was admissible. The trial court erred in excluding the evidence.[13]

■    We turn, finally, to the issue whether the trial court's exclusion of the evidence, although error, was harmless.

> "Under Oregon law, a verdict against a criminal defendant may be affirmed notwithstanding trial error if the error did not affect a 'substantial right' of the defendant. OEC 103(1). This court has interpreted this to mean that the verdict may be affirmed if there is 'little likelihood that the error affected the verdict.' *State v. Hansen*, 304 Or 169, 180-81, 743 P2d 157 (1987); *see also State v. Miller*, 300 Or 203, 220-22, 709 P2d 225 (1985)[, *cert den* 475 US 1141 (1986)]." *State v. Isom*, 306 Or 587, 595-96, 761 P2d 524 (1988).

*See also State v. Williams*, 313 Or 19, 56, 828 P2d 1006 (1992) (explaining same); *State v. Walton*, 311 Or 223, 230-31, 809 P2d 81 (1991) (describing constitutional basis for Oregon doctrine and contrasting rule under federal constitution).

We are not convinced that there is little likelihood that the error affected the verdict. In *State v. Hubbard*, 297 Or 789, 688 P2d 1311 (1984), this court held that the trial judge had erroneously excluded evidence concerning a witness' bias or interest. The court then held that the error required reversal, stating:

> "The final question to be resolved is whether the trial judge's ruling is reversible. It is error for the trial judge to exclude evidence which establishes sufficient facts from which the bias or interest of a witness may be inferred. If in the context of the entire trial, the exclusion is prejudicial to the party who sought to introduce the impeachment evidence, it is reversible error. * * *
>
> "* * * * *
>
> "We * * * hold that a decision to exclude evidence relevant to bias or interest which is error, is reversible if it denies the [finder of fact] an adequate opportunity to assess the credibility of a witness whose credibility is important to the

---

[13] Because we rule in defendant's favor on his statutory claim, we need not consider his constitutional claim.

outcome of the trial. If numerous other witnesses testified to a given fact, then the exclusion of evidence of a witness' bias or interest who testified to the same fact might be 'harmless error' in the context of a given trial. But where the impeached witness is the sole witness on a given issue and there is no corroborating evidence, the interests of a fair trial require that the adverse party be given ample opportunity to establish the witness' bias or interest." 297 Or at 800-01.[14]

In this case, the witness sought to be impeached was the child. Although she made several consistent statements to four witnesses, the child ultimately was the sole witness concerning the identity of the perpetrator of the crime.

It is true that the child's inculpatory statements were corroborated in two respects. First, the medical evidence established sexual abuse. Second, there is no evidence that the child ever implicated anyone else or that anyone else had access to the child that would have permitted the abuse to occur. However, those facts did not affirmatively corroborate the identity of the perpetrator of the abuse.

The state argues that the trial court doubted the credibility of the child's mother, through whom defendant sought to introduce the child's statements. That appears to be true. The trial court found defendant guilty notwithstanding the mother's testimony — which was contradicted by other witnesses — that defendant did not have access to the child that would have permitted the charged conduct to occur. In addition, there was evidence of the mother's bias (she is married to defendant) and testimony regarding her propensity to lie.

Nevertheless, we cannot say with confidence that the trial court also would have disbelieved the mother's testimony regarding the child's "recanting" or other impeaching statements or that, if the court believed that those statements were made, the outcome would have been the same nonetheless. We are not satisfied that there was little likelihood that the trial court's ruling affected defendant's

---

[14] The trial in *State v. Hubbard, supra,* took place before the effective date of the Oregon Evidence Code. However, the court analyzed the issues under the Oregon Evidence Code, stating that the applicable principles remained unchanged. 297 Or at 796.

conviction. Therefore, the erroneous exclusion of the statements requires reversal.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed as to the charge of sexual abuse in the first degree, and the case is remanded to the circuit court for further proceedings.