Argued and submitted October 20, 2020, affirmed March 17, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN RASHAD,
*Defendant-Appellant.*

### Jackson County Circuit Court
18CN05965; A170525

483 P3d 1223

Defendant appeals from a judgment finding him in contempt for contacting the victim at work in violation of a restraining order. He argues that the trial court erred in excluding as not relevant cross-examination as to whether the victim thought defendant was having an affair with the victim's wife in order to show the victim's bias. *Held*: The trial court erred in excluding the cross-examination because a witness's bias is always relevant. Nevertheless, the error was harmless because the court's speaking verdict demonstrated that it had relied on the testimony of another witness rather than the victim in reaching its verdict.

Affirmed.

Laura A. Cromwell, Judge.

John Evans, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant purchased condoms at a convenience store where the victim—who had an active restraining order against defendant—was working at a cash register. The victim claimed that defendant approached him and insulted him, while defendant testified that he did not even recognize the victim. Defendant was found in contempt for violating the terms of the restraining order. ORS 33.015; ORS 33.065. On appeal, defendant argues that the trial court erred in excluding as irrelevant cross-examination as to whether the victim thought defendant was having an affair with the victim's wife. Defendant contends that that information is relevant to establish the victim's motive to lie and get defendant in trouble with the law. Because there was little likelihood that exclusion of the evidence of bias affected the trial court's verdict, we conclude that the error was harmless and affirm.

We review evidentiary decisions, and, specifically, the determination of whether evidence is relevant under OEC 401, for legal error. *State v. Pitt*, 352 Or 566, 576, 293 P3d 1002 (2012). In determining whether an evidentiary error is prejudicial, we review the record in light of the error at issue and ask whether "there [was] little likelihood that the * * * error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

The trial court erred in excluding the evidence. Evidence that has a "mere tendency" to show the bias or interest of a witness is relevant. *State v. Crum*, 287 Or App 541, 553, 403 P3d 405 (2017) (internal quotation marks omitted). Indeed, it is "always permissible" to attempt to show bias, and courts should afford "[w]ide discretion in cross-examination" to demonstrate such bias. *State v. Kennedy*, 308 Or App 651, 656, 480 P3d 986 (2021) (internal quotation marks omitted). That the victim thought defendant was having an affair with his wife has some tendency to show that the victim is biased against defendant.

However, the trial court's exclusion of the testimony was harmless on this record. Defendant's theory of the case was that he did not willfully violate the restraining order because he did not recognize the victim at all. *See State v.*

*Welch*, 295 Or App 410, 416-17, 434 P3d 488 (2018) (defining what it means to willfully violate an order). The court's speaking verdict in this case demonstrates that its credibility determination turned on the testimony of a third-party witness, which corroborated the victim's version of events and flatly contradicted defendant's. *See State v. Reed*, 299 Or App 675, 694, 452 P3d 995 (2019), *rev den*, 366 Or 382 (2020) (concluding that evidentiary error was harmless where the trial court's speaking verdict made clear that the court's credibility determination was not affected by that error).

The manager of the convenience store testified that she was able to view the events from her office on closed-circuit video surveillance. Although that video did not have sound, so she was unable to hear what defendant said, she was able to see the encounter. She testified that the victim, a very tall man, was standing at the front of the counter when defendant entered the store and that someone entering the store would see the victim "immediately." She further testified that defendant approached the counter and was standing "face-to-face" with the victim. Although she could not hear "exactly what he said," she "[knew] that it intimidated and taunted [the victim]" because the victim backed all the way up into a corner away from defendant. The reaction was so dramatic that the manager left her office to approach the register and see what the problem was. When asked whether the manager could tell if defendant had made eye contact with the victim, she testified, "Absolutely. He was face-to-face with him." In its speaking verdict, the trial court noted that, based on the manager's testimony, "it was clear that based on body language that there was some interaction. Though she couldn't hear what it was, there was some interaction between the two people."

In contrast, defendant testified that he noticed a man "sitting in the corner" but he "didn't interact with him at all." This was inconsistent with the manager's testimony that defendant and the victim stood face to face, some form of interaction transpired between the two, and the victim physically backed up after it occurred. On this record, we are confident that, even if defendant had been allowed to present evidence that the victim believed his wife was having an affair with defendant, it would not have affected the

court's view of the manager's testimony, and the trial court would have reached the same verdict based on the fact that defendant approached the victim and interacted with him in a way that amounted to a violation of the restraining order. *Cf. State v. Ramirez*, 310 Or App 62, 68, 483 P3d 1232 (2021) (concluding that error in excluding impeachment evidence was harmful where victim's credibility was a "core issue" in the case). Accordingly, the exclusion of additional evidence of bias was harmless.

Affirmed.