Submitted December 17, 2020, reversed and remanded March 17, 2021

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# ISAIAH ISADORE RAMIREZ,
aka Isaiah Isadore Ramirez-Archuleta-Salinas,
*Defendant-Appellant.*

### Multnomah County Circuit Court
18CR47531, 18CR30349, 18CR30728;
A170122 (Control), A170123, A170124

483 P3d 1232

In this consolidated case, defendant appeals from a judgment of conviction for third-degree sexual abuse, ORS 163.415, and the revocation of his probation. He argues that the trial court erred in prohibiting him from offering extrinsic evidence of the complaining witness's prior inconsistent statement for the purposes of impeachment. The state concedes that the trial court erred, but argues that we should nevertheless affirm because either defendant's offer of proof was insufficient, or the error was harmless. *Held*: The state's concession is accepted, and the trial court erred in excluding the evidence. On this record, the Court of Appeals could not conclude that defendant's offer of proof was insufficient, as defendant explained at trial how the anticipated testimony tracked the tenor of defendant's cross-examination of the complaining witness. Nor could the court conclude that the error was harmless, as the excluded evidence revealed an inconsistency that went to core issues under the defendant's theory of the case.

Reversed and remanded.

Christopher J. Marshall, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

JAMES, J.

Reversed and remanded.

**JAMES, J.**

In this consolidated case, defendant appeals from a judgment of conviction in Multnomah County Case No. 18CR47531 for third-degree sexual abuse (ORS 163.415), and the revocation of his probation in Multnomah County Case No. 18CR30349. On appeal, defendant argues that the trial court erred in prohibiting him from offering extrinsic evidence of the complaining witness's prior inconsistent statement for the purposes of impeachment. The state concedes that the trial court erred but argues we should nevertheless affirm because either defendant's offer of proof was insufficient, or the error was harmless. We disagree on both points, accept the concession on the merits, and reverse and remand.[1]

We review the trial court's evidentiary ruling for errors of law. *State v. Arellano*, 149 Or App 86, 90, 941 P2d 1089 (1997), *rev dismissed*, 327 Or 555, 971 P2d 411 (1998). Evidentiary error is not presumed to be harmful, and we will affirm a defendant's conviction if "there [is] little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Because defendant was convicted after a jury trial, we state the pertinent facts in the light most favorable to the state. *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008).

The complaining witness in this case, T, worked at the Sisters of the Road Café, an establishment that primarily serves the homeless population. Defendant and T knew each other from T's work there.

On June 30, 2018, T encountered defendant while walking to work. At trial, T described that defendant approached her, greeted her, then started forcibly kissing her. T testified that she responded by telling defendant to stop. T testified that defendant did not stop, but instead put his hands in her shirt, through her sports bra and touched her breast, and then put them down her pants to touch her

---

[1] This is one of two cases we issue today addressing the evidentiary harm of the improper exclusion of impeachment evidence, the other being *State v. Rashad*, 310 Or App 112, 483 P3d 1223 (2021).

vaginal area. T was able to push him away at that point. T testified that, as he walked away, defendant said, "We'll finish this later. We can get a motel room and we'll finish this later." T estimated that the entire encounter took between five and eight minutes.

T called the police on July 12, 2018, to report the incident. Officer Pahlke came to talk to her, but for a variety of reasons, T did not feel that Pahlke responded appropriately to her complaint. Five days later, after noticing that defendant had not been arrested, T called the police again and was subsequently interviewed by Officer Walters. She had a better experience with Walters because she "felt like that officer listened more." The facts just related correspond to the facts T told Walters.

At trial, the defense argued that the encounter between defendant and T began as consensual kissing, and that it was after the touching occurred, not before, that T told defendant to stop. According to the defense theory of the case, defendant stopped when T asked him to stop.

Defendant's counsel cross-examined the complaining witness, seeking to elicit her admission that her earlier statements to Pahlke materially differed from her statements to Walters, specifically concerning whether the encounter began consensually and at what point T had indicated to defendant it was no longer consensual:

"[DEFENSE]:   So, again, it's your testimony that—it's your testimony that you did not tell Officer Pahlke that you and [defendant] began to kiss?

"[WITNESS]:   Correct.

"* * * * *

"[DEFENSE]:   Okay. So—so you and [defendant] were talking and he began to caress your breasts?

"[WITNESS]:   Yeah, after he started kissing on me.

"[DEFENSE]:   Okay. And it was at—so at that point [defendant] attempted to touch the vaginal area outside your pants? That's what you told Officer Pahlke, correct?

"[WITNESS]:   Correct.

"[DEFENSE]:   And it was at that point that you told [defendant] to stop?

"[WITNESS]:   I kept telling him to stop more than once.

"[DEFENSE]:   You told Officer Pahlke it was at that point you told him to stop.

"[WITNESS]:   That's not correct. I kept telling [defendant] to stop when he first started kissing on me."

Following that exchange, defendant sought to call Pahlke. Defense counsel indicated that his intent was to call Pahlke, not for the truth of the complaining witness's prior statements, but as impeachment, "just as prior inconsistent statements, which again would be pivotal to our defense." The trial court expressed concern that the witness's statements to Pahlke would be hearsay. The trial court ultimately disallowed the testimony, ruling "it is inadmissible, because it is not—it doesn't meet the qualifications for a prior inconsistent statement, was not a statement made under oath. It would be hearsay."

Defendant now challenges that ruling, asserting that the trial court erred in concluding that the witness's prior inconsistent statement was inadmissible for impeachment through Pahlke. The state concedes the error, and that concession is well taken.

Confronting a witness with the witness's own prior inconsistent statements is not hearsay, but rather is a type of impeachment evidence offered not for the truth of the matter asserted but to cast doubt on the credibility of the witness. *See State v. Guzek*, 336 Or 424, 449-50, 86 P3d 1106 (2004), *vac'd and rem'd on other grounds*, 546 US 517, 126 S Ct 1226, 163 L Ed 2d 1112 (2006); *see also Blue Ribbon Bldgs. v. Struthers*, 276 Or 1199, 1205, 557 P2d 1350 (1976); *State v. Phillips*, 314 Or 460, 470-71, 840 P2d 666 (1992) (so stating in terms of a hearsay declarant who can be impeached in the same way as a witness under OEC 806).

OEC 613 provides:

"(1)   In examining a witness concerning a prior statement made by the witness, whether written or not, the

statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(2)   Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in ORS 40.450[.]"

Under OEC 613, extrinsic evidence of a prior inconsistent statement may be admissible if the witness is given the opportunity to explain or deny it. OEC 613(2). A prior statement is inconsistent if there is a "material variance" between the prior statement and the testimony of the witness. *State v. Shearer*, 101 Or App 543, 546, 792 P2d 1215, *rev den*, 310 Or 205 (1990) (citing *Rigelman v. Gilligan*, 265 Or 109, 121, 506 P2d 710 (1973)).[2]

Nevertheless, despite the error here, the state asserts that reversal is not appropriate for two reasons. First, the state argues that defendant's offer of proof was insufficient. Alternatively, the state argues that the value of the impeachment evidence was *de minimis* and the error therefore harmless. We disagree on both points.

A party may make an offer of proof by summarizing what the proposed evidence would show. *Phillips*, 314 Or at 466. An offer of proof need not be extensive. It suffices so long as it "make[s] it possible for the trial judge to know the nature of th[e] evidence and for a court on review to be able to determine whether the judge's ruling was a permissible one." *State v. Wright*, 323 Or 8, 14, 913 P2d 321 (1996).

Here, defendant made an offer of proof, stating:

---

[2] In *Harper v. Washburn*, 308 Or App 244, 249, 479 P3d 1101 (2020), we recently noted that impeachment evidence, while often spoken of colloquially and without grounding, is governed by specific rules of evidence that control its categorization and admission. We also noted that "[e]vidence that undermines a witness's credibility comes in many forms, some more subtle than others. Such evidence may also blur the line between substantive evidence and impeachment evidence." *Id*. In light of the concession in this case, we leave a deeper exploration of those issues for another day.

"If we were to call Officer Pahlke to the stand, [the defense] would want to elicit testimony that [the victim] stated that they began to kiss and[,] while kissing[,] [defendant] caressed [her] breasts. [Defendant] then attempted to touch her vagina on the outside of her pants and [the victim] told him to stop, but [defendant] stopped and told [the victim], 'I'll pick you up later and we can finish this.' * * * [The victim] stated that she did not like that [defendant] touched her breasts, that she did not give him permission."

That explanation of the anticipated testimony tracked the tenor of defendant's cross-examination of the complaining witness. On this record, there is no confusion about the nature of the excluded evidence or the inconsistency that it would show.

Neither can we conclude that exclusion of the impeachment evidence was harmless. Under the harmless-error doctrine, we will affirm despite the error if "there is little likelihood that a particular error affected the verdict." *Davis*, 336 Or at 32 (quoting *State v. Parker*, 317 Or 225, 234 n 10, 855 P2d 636 (1993)) (internal quotation marks, brackets, and ellipses in *Davis* omitted); *see also* OEC 103 (stating that evidential error is not presumed prejudicial and that error may not be predicated upon a ruling to admit or exclude evidence unless a substantial right has been affected). When deciding whether there was harmless error, we review all pertinent portions of the record. *State v. Goff*, 258 Or App 757, 765, 311 P3d 916 (2013). In assessing harmlessness in this context, we consider the role that the excluded evidence played in the proponent's theory of the case. *State v. Hren*, 237 Or App 605, 609, 241 P3d 1168 (2010).

In conducting our harmless error analysis, "we focus on 'the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling.'" *State v. Scott*, 265 Or App 542, 549, 335 P3d 1283 (2014) (quoting *Davis*, 336 Or at 32). As we have said, "we do not usurp the role of the factfinder and determine if defendant is guilty or reweigh the evidence." *State v. Zaldana-Mendoza*, 299 Or App 590, 613, 450 P3d 983 (2019). Rather, "if there is any evidence to support defendant's theory, we

accept that evidence and consider whether that evidence would still have had little likelihood of affecting the verdict." *Id*.

Here, the excluded evidence showed an inconsistency that, at least under defendant's theory of the case, went to a core issue—had the complainant previously reported that upon first being told to stop, defendant stopped. Defendant's theory posited that the complaining witness had altered her version of events upon frustration at law enforcement's response and defendant's lack of arrest. As the defense counsel explained:

> "Defense's theory is there are inconsistencies in both Officer Pahlke's account and Officer Walter's account. And given the inconsistencies, we can then shed light on the credibility issue with the allegations.
>
> "Now, we want to bring up the fact that an initial investigating officer did take down statements and then highlight that the State has chosen not to call Officer Pahlke and thereby failing to meet their burden to give the jury the full picture of what exactly happened during the course of the investigation. * * *
>
> "* * * [O]n Monday we just learned information that [the complaining witness] had spoken * * * [and] that she had these opinions about the first officer, that she felt that he didn't take her seriously, wasn't listening to her, wasn't nice to her. And upon learning that—we didn't find that out until morning[,] yesterday morning, and that's when we discovered oh, you just revealed to us a motive that would have her change her story the second time around. If she felt that the first officer wasn't paying attention to her, was misinterpreting her statements, wasn't taking her seriously, that would then be motive to exaggerate and embellish the claims with the second officer to be taken more seriously the second time around."

It may not be a theory that this court, as factfinder, would find persuasive, but we cannot conclude that it could not have persuasive value to *any* factfinder in determining how much to trust or distrust the complainant's testimony and, consequently, whether the state had proved its case beyond a reasonable doubt. We cannot therefore confidently say that the error had no likelihood of affecting the verdict.

Accordingly, we accept the state's concession of error, and reverse and remand.

Reversed and remanded.