190 February 19, 2026 No. 107

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

ZEKIAH PORTER HOPE CUSHMAN,
*Plaintiff-Respondent,*

*v.*

Jamie MILLER,
*Defendant-Appellant.*

Malheur County Circuit Court
23CV14615; A183151

Jenefer Stenzel Grant, Senior Judge.

Argued and submitted March 7, 2025.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Margaret Huntington argued the cause for respondent. Also on the brief was Equal Justice Law.

Before Shorr, Presiding Judge, Egan, Judge, and Powers, Judge.

SHORR, P. J.

Judgment on Claim 1 reversed and remanded; otherwise affirmed.

Egan, J. concurring.

**SHORR, P. J.**

Defendant, the superintendent of Snake River Correctional Institution (SRCI), appeals from a judgment granting habeas corpus relief to plaintiff, an adult in custody (AIC) at SRCI. The trial court granted plaintiff's first claim for relief on the grounds that defendant's failure to provide gender-affirming care subjected plaintiff to cruel and unusual punishment and unnecessary rigor.[1] On appeal, defendant raises three assignments of error, including that the trial judge improperly excluded two of defendant's witnesses as a discovery violation sanction; erroneously denied defendant's motion to reconsider the sanction; and improperly admitted the transcript of testimony from a different trial as impeachment evidence against a defense witness. Because we reverse and remand on the third assignment of error, we do not reach the first two.

In her habeas replication, plaintiff alleged that defendant had refused to adequately treat her gender dysphoria and provide adequate medical care, which caused her substantial suffering. A core issue at trial was what care plaintiff had not received and the reasons for defendant's failure to provide that care. At trial, the medical director of the Oregon Department of Corrections (ODOC), Dr. Roberts, testified regarding ODOC's approach to gender-affirming care in general and how decisions are made as to what care is medically necessary.

During his testimony, both parties asked questions about a document entitled "ODOC Clinical Guidelines for Gender Dysphoria," which enumerated available treatments and the criteria for authorizing them, and various other treatments that were considered to be cosmetic and therefore not medically necessary. Roberts testified that the document was created in 2018 and was no longer current policy,

---

[1] The court additionally granted in part plaintiff's second claim for relief based on defendant's failure to protect plaintiff from assaults and harassment by other AICs, concluding that plaintiff had met her burden with respect to proving unnecessary rigor, but denied the claim as to cruel and unusual punishment. The court also denied plaintiff's third claim for relief based on inappropriate discipline. The resolutions of the second and third claims are not at issue in this appeal, and this opinion relates only to the court's decision to grant relief on the denial of appropriate medical care claim.

and that the Behavioral Health Services team that made the ultimate decisions about treatment for AICs with gender dysphoria were aware that the document was not current policy. He testified that care decisions were individualized based on an AIC's needs and diagnosis, and that there were no blanket exclusions regarding available treatments.

Roberts was also asked questions by both plaintiff's counsel and the court regarding testimony that he had given in a separate trial a month and a half earlier regarding the habeas claims of another AIC, Zyst, in relation to gender-affirming care, and the testimony of another ODOC employee, Hutson, also given in the Zyst trial. Counsel for plaintiff asked Roberts about Hutson's testimony in the Zyst trial that the 2018 document was still in effect and guided what treatments were offered and approved; Roberts responded that he could not speak for Hutson, had not witnessed her testimony in the prior trial, and could not speak specifically to what others believed about the document, but reaffirmed his testimony that the document was not currently in effect. The court indicated that it was difficult to reconcile Hutson's prior testimony with Roberts's current testimony regarding the applicability of the guidelines and the role they played in authorizing certain categories of care.[2]

Following that questioning, plaintiff offered the entire transcript of the Zyst trial as impeachment evidence. Defendant objected to the introduction of someone else's testimony to impeach Roberts and argued that Roberts's testimony had been consistent between the two trials. The court allowed the transcript to come in as evidence, stating:

> "So, I think that it's appropriate, because both of these cases involve the same questions of what—what DOC authorizes as gender-affirming care.

---

[2] The same judge presided over both trials, and therefore had independent memory of the testimony from the Zyst trial. The parties have not raised any issues regarding the trial court's reliance on its recollection of the details of the Zyst trial.

The court determined that defendant's medical treatment of Zyst's gender dysphoria violated state and federal constitutional prohibitions against cruel and unusual punishment and unnecessary rigor, a determination that we recently affirmed. *Zyst v. Miller*, ___ Or App ___, ___ P3d ___ (2026) (affirming the finding of constitutional violations, but reversing two of the specific remedies ordered).

"And I think the testimony from Dr. Roberts is valuable on this topic, whether it happened in this case or another.

"Just for the—for—you know, to let you know, I do not recall inconsistencies between Dr. Roberts's testimony today and in the last case, but I'm prepared to look at the transcript.

"I do think that there is a significant issue, in that Ms. Hutson testified very differently from what Dr. Roberts has today and last time regarding what DOC's guidelines are in these questions.

"So, I think that it is appropriate for those transcripts to be part of this record."

The court ultimately granted plaintiff's claim with respect to defendant's failure to provide necessary gender-affirming care.

On appeal, defendant argues that the court erred in admitting the transcript of Hutson's testimony from the Zyst trial. We review the trial court's evidentiary ruling for errors of law. *State v. Ramirez*, 310 Or App 62, 63, 483 P3d 1232 (2021).

Defendant asserts that a witness cannot be impeached by another witness's inconsistent statements, and that OEC 613 allows a witness to be impeached only by their own prior inconsistent statements. Plaintiff does not defend the court's decision to admit the Zyst trial transcript under OEC 613. We agree with defendant. OEC 613 controls the use of a witness's prior statements if offered to impeach on the grounds that the prior statements by that witness are inconsistent with their present testimony. The plain text of the rule provides that the prior inconsistent statement must be those of the same individual appearing as a witness.[3] "Confronting a witness with the witness's own

---

[3] OEC 613 states, in part:

"(1) In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(2) Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."

prior inconsistent statements is not hearsay, but rather is a type of impeachment evidence offered not for the truth of the matter asserted but to cast doubt on the credibility of the witness." *Ramirez*, 310 Or App at 65. The transcript of Hutson's testimony in the Zyst case was not admissible as prior inconsistent statements under OEC 613 for impeachment of Roberts.[4]

As noted, plaintiff does not offer an argument for why the transcript of Hutson's testimony was admissible as impeachment evidence under OEC 613; rather, she asserts that any error was harmless, and alternatively argues that the transcript was admissible as substantive evidence under alternate rules of evidence. We conclude that the error was not harmless, and we reject plaintiff's arguments that we can affirm under the "right for the wrong reason" doctrine.

We begin with harm. An error is harmless if there is "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Plaintiff first asserts that the admission of the transcript was harmless in light of the questions that plaintiff and the court asked during the course of Roberts's testimony, which demonstrated the differences in testimony at the Zyst trial. We reject that argument. Questions from counsel and the court are not evidence. *Dept. of Human Services v. J. M. T. M.*, 290 Or App 635, 639, 415 P3d 1154 (2018). Roberts did not witness Hutson's testimony in the Zyst trial and did not testify regarding its substance in any way. The trial transcript was the only actual evidence of the contents of the testimony from the prior trial.

Plaintiff also asserts that the admission of the Zyst transcript was harmless because the court did not rely on it in reaching its conclusions. Plaintiff argues that the issue in the present case was the treatment that plaintiff in particular had been offered and whether it was sufficient for her, and that what ODOC's general policies were had little relevance to those questions. We disagree. The court's

---

[4] Defendant does not argue about the admissibility of Roberts's own testimony from the prior trial or whether it was inconsistent with his present testimony. The argument is limited to the admission of the transcript of Hutson's testimony in the Zyst trial. We therefore similarly limit our discussion.

statements during trial and its ultimate opinion and order demonstrate that it considered what ODOC's overall policies were in reaching its conclusion. In ruling to admit the transcript the court stated that it was appropriate because both cases involved the same question of what ODOC authorized as gender-affirming care and that there was "a significant issue, in that Ms. Hutson testified very differently from what Dr. Roberts has today and last time regarding what DOC's guidelines are in these questions." In the written opinion and order, the court stated: "The question at issue surrounds the care Plaintiff has not received, and the reasons for Defendant's failure to provide that care." The opinion went on to mention the "very limited menu of offerings" defendant provides to AICs seeking gender-affirming care and noted that defendant was "unreasonably refusing to effectively treat [plaintiff's condition] despite its claims that the entire spectrum of gender affirming care is theoretically available to Plaintiff." The court further stated that "Defendant has provided a narrow range of care from a menu its medical director says is outdated and non-compliant with current standards of gender-affirming care[.]"

Furthermore, in issuing its limited oral ruling from the bench at the conclusion of trial, the court commented:

"I am—I am disappointed and frustrated by Dr. Roberts's testimony. It was almost two months ago that we had the last conversation about this, and it doesn't seem like any further efforts have been made to communicate to the—to the mental health staff that the guidelines from 2018 are no longer expected to be followed.

"So, I think that DOC really needs to change their practices much more quickly than they are. I appreciate the intentions expressed by Dr. Roberts, but I think that, for this—for this plaintiff in this case, it's very obvious to me that she is not getting the care that is medically necessary, and Defendant needs to change that."

The court's comments and the quoted portions of the written opinion demonstrate the court's implicit discrediting of Roberts's testimony that treatment plans were individualized and that no treatments were categorically off the table. Despite the fact that the court also relied on

the specifics of plaintiff's individualized needs and care, it is apparent that defendant's policies and procedures were a factor in the court's evaluation of the claim. We therefore conclude that admission of the transcript of the Zyst trial, and specifically Hutson's testimony about the use of the 2018 guidelines, was not harmless. In other words, we cannot say that the error had little likelihood of affecting the court's verdict. *Davis*, 336 Or at 32.

We turn now to plaintiff's argument that Hutson's testimony was admissible on other bases, including as a vicarious admission or under the state of mind hearsay exception, and that we should therefore affirm under the "right for the wrong reason" doctrine set forth in *Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659-60, 20 P3d 180 (2001). However, even when the record contains evidence sufficient to support an alternative basis for affirmance, "if the losing party might have created a different record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance." *Id.* at 660 (emphasis omitted). Had plaintiff offered the transcript of Hutson's testimony as a vicarious admission of ODOC or to prove Hutson's state of mind, defendant may have chosen to call Hutson herself, or other witnesses, to minimize the impact of Hutson's testimony from the Zyst trial with respect to those purposes. The parties could have made different arguments regarding the transcript's relevance for those purposes, and the trial court would have considered the evidence in a different light. Because the record could have developed differently had those legal theories been advanced, we do not address plaintiff's right-for-the-wrong-reason arguments.

Judgment on Claim 1 reversed and remanded; otherwise affirmed.

**EGAN, J.,** concurring.

I begin by stating plainly, the majority is absolutely correct in its application of the law to the facts of this case. We are bound by our position and the posture of this case to review the trial court's determination for legal error. The

trial court clearly erred in allowing the transcript into evidence for its impeachment value. The testimony of a witness in a prior case cannot be used to impeach a separate witness in a subsequent case. The trial court's decision was evidently influenced by the transcript and, therefore, the error was not harmless.

Procedural fairness is a bedrock of the rule of law; if we fail to safeguard that fairness, we risk toppling the very notion of justice. And yet, the circumstances of this case demonstrate the way in which real-life injustices are sometimes perpetuated under the guise of procedural fairness. The trial judge chose to admit the testimony of the prior case—a case over which they had presided—because they were uncomfortable with the discrepancy between what they had heard in that prior case and what they were hearing in this present case about how ODOC treats AICs who experience gender dysphoria.

We must encourage vigorous advocacy at the trial level. Similarly, we must presume that such advocacy has been provided at trial in cases that come before us on appeal. We also must assume that equally vigorous advocacy would have been differently provided if the circumstances of the trial had been different. It is that duty and those presumptions that underlie the rule that guides our application of the "right for the wrong reason" doctrine; the majority was correct to rely upon it: "[I]f the losing party might have created a different record below had the prevailing party raised the issue, and that record could affect the disposition of the issue, we will not consider the alternative basis for affirmance." *Outdoor Media Dimensions Inc, v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001).

In its opinion, the majority writes:

"Had plaintiff offered the transcript of Hutson's testimony as a vicarious admission of ODOC or to prove Hutson's state of mind, defendant may have chosen to call Hutson herself[.]"

True as that may be—procedurally, technically, and legally correct—the common-sense reality is that the defendant would have been *very unlikely* to *actually* call Hutson herself

for the exact reason that concerned the trial judge: Hutson's testimony was directly contrary to the state's position at trial. In fact, it may have been prudent for *plaintiff* to call Hutson for that very reason.

Armchair quarterbacking aside, I write separately to share in the trial judge's concerns about the discrepancy between ODOC officials' testimony. It seems that the plaintiff in this case did not receive the care she required as treatment for her experience of gender dysphoria. The circumstances of this case suggest that ODOC officials are not all on the same page about the proper approach to caring for AICs who experience gender dysphoria and, in that confusion, may be failing to meet the needs of such individuals. The reality is that the rights and liberties of incarcerated individuals diminish to some degree relative to those who are not incarcerated. However, the right of an individual to receive the medical care they require for treatment of their experience of gender dysphoria should not be a right that is so diminished.

Respectfully, I concur in the judgment because I must. However, I do so with concern for the well-being of plaintiff and those incarcerated individuals similarly situated.